# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BUSINESS FINANCIAL SERVICES, INC., BUSINESS CASH ADVANCE, INC.,
FATON, INC., and DOES 1 through 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CAPTAIN BOUNCE, INC., SEVAG KALAJAIN, SAMUEL KHATOMATOURIAN,
and TAMRA COVIELLO dba KC DANCEGEAR, individually and on behalf of all
others similarly situated,

</td><td>

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

~~FAST~~ COUNTY DIVISION

11 MAR 10 PM 2:49

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

</td></tr>
</table>

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr><td>

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Diego County Superior Court, North County Regional Center
325 South Melrose Drive
Vista, CA 92081

</td><td>

CASE NUMBER:
*(Número del Caso):*
**37-2011-00052329-CU-BT-NC**

</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James F. Clapp (145814)
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Ste. 970, San Diego, CA 92122   Tel: 858-623-4200

<table>
<tr><td>

DATE:
*(Fecha)* MAR 1 0 2011

</td><td>

Clerk, by
*(Secretario)*

</td><td>

T. Moore

</td><td>

, Deputy
*(Adjunto)*

</td></tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**Exh. A, p. 01**

**CM-010**

FILED

FOR COURT USE ONLY

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>James F. Clapp (145814), Zach P. Dostart (255071)<br>DOSTART CLAPP & COVENEY, LLP<br>4370 La Jolla Village Drive, Suite 970<br>San Diego, CA 92122<br>TELEPHONE NO.: 858-623-4200       FAX NO.: 858-623-4299<br>ATTORNEY FOR *(Name):* Plaintiffs CAPTAIN BOUNCE, et al. | NORTH COUNTY DIVISION<br><br>11 MAR 10 PM 2: 49<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 325 South Melrose
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, CA  92081
BRANCH NAME: North County Regional Center

CASE NAME:
Captain Bounce, et al. v. Business Financial Services, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>37-2011-00052329-CU-BT-NC |
|---|---|---|
| ☑ Unlimited  ☐ Limited<br>(Amount         (Amount<br>demanded     demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>☑ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02) | **Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties       d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel       e. ☑ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence       f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*  (1) Usury; (2) Money Had & Received; (3) Unfair Comp.; (4) Dec. Relief
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  March 10, 2011

Zach P. Dostart
_____                         _____
(TYPE OR PRINT NAME)                                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

American LegalNet, Inc.<br>www.FormsWorkflow.com

**Exh. A, p. 02**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

Exh. A, p. 03

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 325 S. Melrose |
| MAILING ADDRESS: | 325 S. Melrose |
| CITY AND ZIP CODE: | Vista, CA 92081 |
| BRANCH NAME: | North County |
| TELEPHONE NUMBER: | (760) 201-8027 |

PLAINTIFF(S) / PETITIONER(S):   Captain Bounce Inc et.al.

DEFENDANT(S) / RESPONDENT(S):  Business Financial Services Inc et.al.

CAPTAIN BOUNCE INC VS. BUSINESS FINANCIAL SERVICES INC

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2011-00052329-CU-BT-NC |
|---|---|

Judge:  Jacqueline M. Stern                              Department:  N-27

**COMPLAINT/PETITION FILED:** 03/10/2011

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service. (SDSC Local Rule 2.1.7)

CASE MANAGEMENT CONFERENCE: A Case Management Conference will be set within 150 days of filing the complaint.

ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION. IF THE CASE IS ORDERED TO ARBITRATION PURSUANT TO CODE CIV. PROC. 1411.11, THE COSTS OF ARBITRATION WILL BE PAID BY THE COURT PURSUANT TO CODE CIV. PROC. 1141.28.

FOR MORE INFORMATION, SEE THE ATTACHED ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730)

**Exh. A, p. 04**

FILED
NORTH COUNTY DIVISION

11 MAR 10 PM 2: 48

(G.O)
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1   JAMES F. CLAPP (145814)
    jclapp@sdlaw.com
2   ZACH P. DOSTART (255071)
    zdostart@sdlaw.com
3   DOSTART CLAPP & COVENEY, LLP
    4370 La Jolla Village Drive, Suite 970
4   San Diego, California  92122-1253
    Tel:  858-623-4200
5   Fax: 858-623-4299

6   J. DANIEL HOLSENBACK (145640)
    dan@holsenbackapc.com
7   HOLSENBACK APC
    4370 La Jolla Village Drive, Suite 970
8   San Diego, CA 92122-1253
    Telephone: 619-269-4634
9   Facsimile: 619-269-4635

10  Attorneys for Plaintiffs

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13          IN AND FOR THE COUNTY OF SAN DIEGO – NORTH COUNTY

14

15  CAPTAIN BOUNCE, INC., SEVAG          CASE NO.
    KALAJAIN, SAMUEL                     **37-2011-00052329-CU-BT-NC**
16  KHATOMATOURIAN, and TAMRA
    COVIELLO dba KC DANCEGEAR,           CLASS ACTION COMPLAINT
17  individually and on behalf of all others
    similarly situated,                  1. Usury
18                                        2. Money Had and Received
                                          3. Unfair Competition
19          Plaintiffs,                   4. Declaratory Relief

20  vs.

21  BUSINESS FINANCIAL SERVICES, INC.,
    BUSINESS CASH ADVANCE, INC.,
22  FATON, INC., and DOES 1 through 50,

23          Defendants.

24

25

26

27

28

---

CLASS ACTION COMPLAINT                              **Exh. A, p. 05**

## INTRODUCTION

1.     Plaintiff Captain Bounce, Inc. is a California corporation with its principal place of business in San Fernando, California.  Plaintiffs Sevag Kalajain and Samuel Khatmatourian are individuals residing in the State of California.  Kalajain and Khatmatourian are the principals of Captain Bounce, Inc.

2.     Plaintiff Tamra Coviello dba KC Dancegear is a sole proprietorship with its principal place of business in Escondido, California.  Coviello is an individual residing in the State of California.  Coviello is the principal of KC Dancegear.

3.     Defendant Business Financial Services, Inc., is a North Carolina corporation that does business in the State of California.  Defendant Business Cash Advance, Inc., is a Florida foreign corporation that does business in the State of California.  Defendant Faton, Inc., is a Florida corporation that does business in the State of California.

4.     Plaintiffs do not know the names of those defendants sued as DOES 1 through 50 but will amend this complaint when those names become known.  Plaintiffs allege on information and belief that each of the defendants, including the DOE defendants, is liable for the conduct alleged herein, either as a principal, agent, successor, alter ego, or co-conspirator of each of the other defendants.

5.     Venue is proper in this judicial district because the complained of conduct occurred in this judicial district.

## FACTUAL BACKGROUND

6.     Defendants are in the business of providing a form of short-term financing known as a "merchant cash advance."  In a merchant cash advance, a finance company lends a borrower (the "merchant") a lump sum of money secured by the borrower's future credit card sales.  The borrower is required to direct its credit card processing company to pay the finance company a percentage of the borrower's credit card receipts until the loan is repaid in full.  The effective annual interest rate on these loans exceeds the interest rate limit established by Article XV, Section 1(2) of the California Constitution.  Plaintiffs are informed and believe that defendants are not licensed or otherwise authorized to make loans in the State of California.

2

CLASS ACTION COMPLAINT

7.     On August 7, 2009, Captain Bounce, Inc. entered into a merchant cash advance transaction with defendants.   The loan agreement, entitled "Accounts Receivable Purchase Agreement," is attached hereto as Exhibit 1 (the "Agreement"). The loan was for $40,000, and the effective annual interest rate was approximately 90%.

8.     Between June and October of 2010, plaintiff KC Dancegear entered into two merchant cash advance transactions with defendants.   Both loan agreements are substantially similar to the document attached hereto as Exhibit 2.   The loans were for $6,500 and $5,000, respectively, and the effective annual interest rate on each loan was approximately 70%.

9.     Plaintiffs are informed and believe that defendants contend that the merchant cash advances they made to plaintiffs and other California borrowers are not subject to California's usury law because they are sales of future receivables instead of loans.  However, Cal. Civ. Code section 1912 defines a "loan of money" as "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time equivalent to that which he borrowed." The merchant cash advances made by defendants to plaintiffs and other California borrowers meet the definition set forth in Section 1912.  Furthermore, the following additional facts establish that defendants' merchant cash advances are loans rather than sales: (1) unlike a sale, which is consummated when the money is paid and the property is delivered, the merchant cash advance is not complete until the money advanced by defendants is repaid in full; (2) defendants' only obligation in a merchant cash advance is to advance cash to the borrower; (3) defendants do not bear any risk of capital loss in a merchant cash advance other than the risk associated with the borrower's inability to pay; (4) borrowers are required to reimburse defendants for any losses they incur in connection with the advance; (5) defendants are entitled to accelerate the borrowers' payments in the event of their default; (6) borrowers are required to submit a credit application and submit to a credit check prior to entering into the merchant cash advance; (7) defendants underwrite the merchant cash advance by assessing the creditworthiness of the borrowers; (8) defendants collateralize the merchant cash advances by filing UCC-1 financing statements; and (9) defendants require the individual owners of the borrowers to execute personal guarantees.

/////

---

CLASS ACTION COMPLAINT

3

## CLASS ALLEGATIONS

10.   _Class Definition._  Plaintiffs bring this lawsuit as a class action under Cal. Code Civ. Proc. section 382.  Plaintiffs seek to represent the following Class: "All natural persons or business entities in the State of California that, during the four years preceding the filing of this complaint, entered into a merchant cash advance transaction with defendants."

11.   _Numerosity._  Plaintiff alleges on information and belief that the Class consists of well over 100 members.

12.   _Ascertainable Class._   The members of the Class may be ascertained from defendants' business records.

13.   _Common Questions of Fact or Law._  This lawsuit is suitable for class treatment because common questions of fact and law predominate over any individual issues.  Common questions include, but are not limited to: (1) whether defendants' merchant cash advance transactions are loans under California law; (2) whether defendants are licensed or otherwise authorized to make loans in the State of California; (3) whether the loans are subject to California's usury law; (4) whether defendants engaged in unlawful, unfair or fraudulent business acts or practices; and (5) the appropriate remedies for defendants' conduct.

14.   _Typicality and Adequacy._  Plaintiffs' claims are typical of the claims of all other Class members.  Plaintiffs will fairly and adequately protect the interests of the other Class members and have no interests that are adverse to the Class members.

15.   _Superiority._  A class action is superior to other means for the fair and efficient adjudication of this controversy.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort or expense.  Class treatment will also avoid the possibility of inconsistent judgments.

16.   _Defendants Have Acted on Grounds Generally Applicable to the Class._  Defendants have acted on grounds that are generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declarative relief with respect to the Class as a whole.

/////

**Exh. A, p. 08**

FIRST CAUSE OF ACTION

(Usury)

17.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

18.     The merchant cash advance transactions between defendants and the Class members, including plaintiffs, were loans.

19.     The annual interest rates on the merchant cash advance transactions entered into between defendants and the Class members, including plaintiffs, exceeded the interest rate limit established under Article XV, Section 1(2) of the California Constitution.

20.     The principal of the merchant cash advances plus the applicable finance charges were absolutely repayable by the Class members, including plaintiffs.

21.     Defendants had a willful intent to enter into usurious transactions with the Class members, including plaintiffs.

22.     Pursuant to Cal. Uncodified Initiative Measures and Statutes 1919-1, Section 3, plaintiffs and the Class members are entitled to three times the interest paid on the usurious transactions, in an amount to be proved at trial.

23.     Defendants' acts were willful, malicious, oppressive, and done in conscious disregard of the rights of plaintiffs and the Class members, entitling plaintiffs and the Class members to an award of punitive damages, in an amount to be proved at trial.

SECOND CAUSE OF ACTION

(Money Had and Received)

24.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

25.     Defendants have received money in the form of usurious interest that is the property of plaintiffs and the Class members.  In equity and good conscience, defendants must restore that money to plaintiffs and the Class members.

THIRD CAUSE OF ACTION

(Violation of Cal. Business & Prof. Code section 17200 et seq.)

26.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

/////

27.    By making illegal loans to plaintiffs and the Class members, defendants have engaged in unlawful, unfair or fraudulent business acts or practices with respect to plaintiffs and the Class members in violation of Cal. Bus. & Prof. Code section 17200 et seq.

28.    Plaintiffs have suffered injury in fact and lost money as a result of defendants' acts of unfair competition.

29.    Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiffs and the Class members are entitled to an order: (1) requiring defendants to make restitution to plaintiffs and the Class members; (2) cancelling the indebtedness owed by plaintiffs and the Class members; (3) cancelling any UCC-1 financing statements filed with respect to plaintiffs and the Class members; (4) cancelling any personal guarantees executed by plaintiffs and the Class members; and (5) enjoining defendants from making illegal loans in the State of California.

<u>FOURTH CAUSE OF ACTION</u>

(Declaratory Relief)

30.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

31.    Plaintiffs contend that the following provisions of the Agreement are unenforceable because they are unconscionable and contrary to California public policy:

32.    <u>Arbitration Provision.</u> Paragraph 21 of the Agreement states that any dispute between the parties must be brought in arbitration.  This provision is unconscionable.   The Agreement is a contract of adhesion, which is presented to borrowers on a take-it-or-leave-it basis, without any meaningful opportunity for negotiation.  As compared to their borrowers, including plaintiffs, defendants have vastly superior bargaining power.   Furthermore, the arbitration provision is substantively unfair, for at least the following reasons:  First, the arbitration provision contains an unconscionable class action waiver.  Defendants' purpose in requiring borrowers to agree to the class action waiver is to deny them a realistic opportunity to challenge the usurious nature of the loans, as part of an overall scheme to cheat a large number of borrowers out of individually small sums of money.  Second, the arbitration provision requires the losing party to pay the entire costs and fees associated with the arbitration. Third, the arbitration provision is unilateral, in that defendants retain their right to bring claims for injunctive relief in court, whereas

**Exh. A, p. 10**

1  plaintiffs ostensibly do not have that right.  Fourth, the arbitration provision forbids the arbitrator

2  from awarding punitive damages.

3       33.   <u>Choice of Law and Venue Provisions.</u>  Paragraph 23 of the Agreement states that

4  North Carolina law governs the Agreement and that any action arising from the Agreement that is

5  not subject to the arbitration provision must be brought in North Carolina.  However, this

6  provision is unenforceable because California has a strong public policy against usury and a

7  greater interest than North Carolina in having its law applied.  The subject loans were negotiated

8  in California; the borrower and the individual guarantor are located in California; the place of

9  performance was California; the sources of repayment were credit card transactions that occurred

10  in California; and defendants recorded UCC-1 financing statements in California.  Enforcement of

11  the choice of law and venue provisions would vitiate plaintiffs' rights under California law and

12  would violate California's strong public policies.

13       34.   Plaintiffs are informed and believe that defendants contend that the above-

14  referenced provisions are enforceable.  Consequently, a dispute has arisen and now exists between

15  plaintiffs and defendants, entitling plaintiffs to declaratory judgment regarding the enforceability

16  of these provisions.

17  <u>PRAYER</u>

18       WHEREFORE, plaintiffs pray for judgment against defendants, jointly and severally, as

19  follows:

20       1.   For compensatory damages according to proof;

21       2.   For punitive damages according to proof;

22       3.   For restitution and injunctive relief as prayed for herein;

23       4.   For declaratory relief as prayed for herein;

24       5.   For pre-judgment interest;

25       6.   For reasonable attorneys' fees and costs of suit; and

26       7.   For such other relief as the Court deems proper.

27  /////

28  /////

7

**Exh. A, p. 11**

Dated: March _10_, 2011

DOSTART CLAPP & COVENEY, LLP

JAMES F. CLAPP
Attorneys for Plaintiffs

426902.1

CLASS ACTION COMPLAINT

8

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This Accounts Receivable Purchase Agreement with Security Agreement and Personal Guaranty ("*Agreement*"), dated as of **August 07, 2009** (the "*Issue Date*"), is made by and among Business Financial Services, Inc., a North Carolina corporation (the "*Purchaser*"), and **Captain Bounce, Inc. DBA Captain Bounce** (circle one) [corporation / limited liability company/limited partnership/general partnership/sole proprietorship] organized under the laws of the State of **California** located at _____ **San Fernando, CA , 91340** ("*Merchant*"), and **Sevag Mekari Kalajain, Samuel Khatomatourian, ("*Guarantor[s]*").**

| |
|---|
| Merchant's Information: |
| Name: <u>Captain Bounce, Inc. DBA Captain Bounce</u> |
| Address: _____ <u>San Fernando, CA , 91340</u> |
| Attn: <u>Sevag Mekari Kalajain, Samuel Khatomatourian,</u> |
| Phone: |
| Facsimile: |
| Bank Name: <u>CalNational</u> |
| Account Number: _____ |
| (the "*Business Account*") |
| Routing Number: _____ |

WHEREAS, Merchant is agreeing to transfer, sell and assign to Purchaser, in accordance with the terms of this Agreement, all of its right, title and interest in a percentage equal to the Settlement Percentage (hereafter defined) of the accounts receivable owed to the Merchant by its Processor (as defined below) that are generated from debit or credit card charges presented by Merchant to Processor, when, if and as such accounts receivable arise out of the sale of goods or rendition of services created in the ordinary course of Merchant's business (the Settlement Percentage of such accounts receivable, the "*Purchased Receivables*") and to grant to Purchaser a security interest as set forth herein. As a further inducement for Purchaser to assume the obligations described herein, the Guarantors are giving to Purchaser their personal guaranty to the extent described herein; and

WHEREAS, Merchant is presently party to, or simultaneously herewith entering into an agreement in the form annexed hereto as Exhibit A (a "*Processing Agreement*" and together with this Agreement, and any other agreement or document related to this transaction, the "*Transaction Documents*") with a processor (together with any subsequent processor servicing the merchant in accordance with this Agreement the "*Processor*") to obtain credit card processing services.

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the sufficiency of which the parties acknowledge, the parties hereto hereby agree as follows:

1. <u>Definitions.</u> For the purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below: (i) "*Affiliate* (s)*" means, with respect to any given Person other than a partnership or limited liability company, any other Person directly or indirectly controlling, controlled by or under common control with such Person and with respect to a partnership, the partners of such partnership and with respect to a limited liability company, the members and managers of such limited liability company; (ii) "*Business Day*" means any day that is not a Saturday, Sunday or a legal holiday in the State of North Carolina on which banking institutions in Charlotte, North Carolina are authorized or obligated by law or executive order to close; (iii) "*Collateral*" shall consist of all of the personal property of the Merchant wherever located, and now owned and hereafter acquired including, without limitation: (a) accounts, including, without limitation, debit or credit card receivables, whether now existing or created in the future; (b) chattel paper; (c) inventory; (d) equipment; (e) instruments, including, without limitation, promissory notes; (f) investment property; (g) documents; (h) deposit accounts; (i) letter of credit rights; (j) general intangibles; (k) supporting obligations; (l) proceeds and products of the foregoing; and (m) commercial tort claims; (iv) "*Dispute*" shall mean any return, dispute, deduction, claim, offset, defense or counterclaim of any kind arising in connection with or relating to any Purchased Receivable; (v) "*Lien*" means any mortgage, pledge, lien, assignment, security interest or other charge or encumbrance, or any agreement to create a lien; (vi) "*Person*" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint stock company, trust or other entity or organization; (vii) "*Proceeds*" means all proceeds of, and all other profits, products, rents or receipts, in whatever form, arising from the sale, exchange, assignment or other disposition of Collateral; (viii) "*Secured Obligations*" means (a) Merchant's obligations under the Transaction Documents, including this Agreement; (b) all of Merchant's present and future obligations to Purchaser; (c) the repayment of (i) any amounts that Purchaser may advance or spend for the maintenance or preservation of the Collateral and (ii) any other expenditures that Purchaser may make under the provisions of this Agreement for the benefit of Merchant; (d) all amounts owed by Merchant under any modification, renewals or extensions of any of the foregoing obligations; (e) all other amounts now or in the future owed by Merchant to Purchaser; and (f) any of the foregoing that arises after the filing of a petition by or against Debtor under the Title 11 of the United States Code (the "Bankruptcy Code"), even if such obligation does not accrue because of the automatic stay under Bankruptcy Code §362 or otherwise; (ix) "*Security Interest*" means the security interest in the Collateral granted hereunder securing the Secured Obligations;

© 2009 Business Financial Services, Inc.

1

✳ Merchant Initial: _____

**Exh. A, p. 13**

and (x) "*UCC*" means the Uniform Commercial Code as in effect on the date hereof in the State of North Carolina; provided, that if by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of the Security Interest is governed by the Uniform Commercial Code as in effect in a jurisdiction other than North Carolina, "UCC" means the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or effect of perfection or non-perfection. Any term used in the UCC and not defined in this Agreement has the meaning given to the term in the UCC.

2. Engagement as Factor.  Merchant hereby engages Purchaser as Merchant's sole factor.

3. Risk.  On all Purchased Receivables, Purchaser agrees to assume the risk of any loss that is due solely to the financial inability of Processor to pay such Purchased Receivable pursuant to the Processing Agreement.

4. Purchase and Payment Procedure.

(a) For purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below:

(i) The "*Bank*" is the bank that is a party to the Processing Agreement;

(ii) The "*Settlement Amount*," for any period, is all of Merchant's accounts receivables for credit card charges owing from Processor for such period that comply with the terms of the Processing Agreement and with rules of the applicable card association and with the applicable merchant operating manual, without any deduction including, without limitation, for credits, adjustments, fines, chargebacks or fees which charges become accounts receivable owing from Processor to Merchant.

(iii) The "**Settlement Percentage**" shall be 16 %.

(iv) The "*Initial Deposit*", to be delivered to Merchant by Purchaser upon the execution of the Transaction Documents, is the sum of $40,000.00 , which amount represents the anticipated aggregate Purchase Price of all Purchased Receivables to be sold, transferred and assigned by Merchant to Purchaser under this Agreement.

(v) The "*Face Amount*", for each Purchased Receivable, shall mean the face amount of such Purchased Receivable, without deduction for any returns, discounts and credits or allowances of any nature at any time issued, owing, or claimed by Merchant's customers, granted or outstanding and without deduction of any charges, fees or commissions owing to, or claimed by, Processor or Bank, granted or outstanding.

(vi) The "*Purchase Price*," calculated for each Purchased Receivable, is the Face Amount of such Purchased Receivable minus the Purchaser's Commission on such Face Amount.

(vii) The "*Purchaser's Commission*" on any amount is 9/29 (nine-twenty ninths) of that amount.

(viii) "*Purchaser's Share of Settlement Payments*" for any period shall be equal to: (a) the Settlement Amount *multiplied by* (b) the Settlement Percentage in effect for that period.  If the Settlement Percentage shall have changed during the period, the relevant Settlement Percentage shall be equal to the weighted average Settlement Percentage calculated in accordance with the number of days during which any given Settlement Percentage shall have been in effect.

(ix) The "*Deposit Balance*," at any point in time, shall be the Initial Deposit minus an amount equal to the aggregate Purchase Price of all Purchased Receivables previously transferred, sold and assigned to Purchaser pursuant to this Agreement.

(x) All defined terms referred to in the Preamble and Recital Paragraphs are incorporated herein by this reference.

(b) Sale and Assignment to Purchaser of Accounts Receivable.  Merchant hereby agrees to sell, transfer and assign to Purchaser, in consideration of Purchaser's payment of the Purchase Price therefore and in accordance with the terms hereof, an aggregate amount of $58,000.00 Face Amount of Purchased Receivables, when, if and as such Purchased Receivables are created by Merchant, immediately upon the creation of such Purchased Receivables in the ordinary course of Merchant's business, in each case free and clear of any Liens.  Immediately upon the creation of any account receivable owed to the Merchant by its Processor, and without any further action by Merchant or by Purchaser, Merchant shall transfer, and assign to Purchaser Purchaser's Share of Settlement Payments in respect of such account receivable.

(c) Payment of Purchase Price by Reduction of Deposit Balance. Upon any sale, transfer and assignment of Purchased Receivables by Merchant to Purchaser, pursuant to Section 4(b), Purchaser shall pay Merchant the aggregate Purchase Price of the Purchased Receivables that Merchant has transferred, sold or assigned to Purchaser for the relevant period through a simultaneous reduction in the Deposit Balance in an amount equal to the Purchase Price for the Purchased Receivables so transferred, sold and assigned during that period. Such amount by which the Deposit Balance shall be reduced shall thereupon become the property of Merchant. Notwithstanding any provision to the contrary in Section 4(b) hereof, if at any time the Deposit Balance is less than the Purchase Price of Purchased Receivables created since the previous payment from Purchaser to Merchant, then Merchant shall only assign, and Purchaser shall only be obligated to pay for, such amount of Purchased Receivables created as the Deposit Balance shall be sufficient to purchase in accordance with Section 4(b) hereof, so as to leave a Deposit Balance of zero (including any purchase that would result in Purchaser only acquiring a portion of an account receivable). The Deposit Balance may not be reduced by any other means, including (but not limited to) a direct cash payment from Merchant to Purchaser, except pursuant to Section 7 or Section 8.

(d) Remittance by Processor of Payments in Respect of Accounts Receivable. Merchant hereby authorizes and directs the Processor to pay to Purchaser the Purchaser's Share of Settlement Payment for every period, without verification from Merchant, until Merchant has assigned to Purchaser Purchased Receivables of aggregate Face Amount in the amount set forth in Section 4(b) and Purchaser shall have received payment in full of all such Purchased Receivables. For avoidance of doubt, in carrying out the direction in this Paragraph 4(d), Processor shall act solely in accordance with Purchaser's instructions to Processor. Such authorization and direction shall be irrevocable without the written consent of Purchaser.

(e) Monthly Statement. Purchaser shall forward Merchant a monthly statement within ten (10) days after the end of each month, which shall conclusively establish, for the purposes of this Agreement, an account stated identifying the Face Amount for Purchased Receivables, which may specify revised amounts for Purchased Receivables previously purchased by Purchaser that have been subjected to fees, chargebacks, fines, adjustments or other deductions by Processor or Bank. Such statement shall be binding upon Merchant with respect to the matters reflected therein, except to the extent that written exceptions thereto are delivered to Purchaser within ten (10) days after the date of such statement is delivered.

5. Representations and Warranties of Merchant. Merchant represents and warrants to Purchaser that on the date hereof and again on each date on which the Deposit Balance is greater than zero, that:

(a) (i)  If Merchant is a corporation, limited liability company, limited partnership or general partnership, then it is validly existing and in good standing under the laws of its state of organization; it has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; it has all requisite power and authority to execute and deliver each Transaction Document and to perform all of its obligations and undertakings, and to carry out the transactions contemplated, under each Transaction Document; and the execution and delivery of, and the performance of all obligations of Merchant under, each Transaction Document, have been duly and validly authorized by all necessary action.

(ii)  If Merchant is a sole proprietorship, then the natural person who is the sole proprietor has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; and has the full and unrestricted legal capacity to execute and deliver each Transaction Document and to perform all of his or her obligations and undertakings, and to carry out the transactions contemplated, under each Transaction Document.

(b) Each Purchased Receivable is and, at the time of transfer, sale and assignment to Purchaser, will be, bona fide and existing obligations of the Processor or Bank arising out of the sale of goods and/or the rendition of services in the ordinary course of Merchant's business, free and clear of all Liens and security interests, owned by and owing to Merchant without any Dispute.

(c) Merchant is solvent and fully authorized to assign and sell transfer and assign the Purchased Receivables hereunder.

(d) The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereunder, and compliance with the provisions of each Transaction Document, does not and will not (i) violate the certificate of incorporation, limited liability company certificate, limited liability company agreement, partnership agreement or other organizational document or bylaws of Merchant, (ii) conflict with, or result in any violation, of any applicable law, rule, regulation, judgment, injunction, order or decree, or (iii) conflict with, constitute a default, or entitle any person or entity to receipt of notice or to a right of consent, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit, or to any increased, additional, accelerated or guaranteed rights or entitlement of any person or entity, or result in the creation of any claim on the properties or assets of Merchant, under any provision of any agreement or other instrument binding upon Merchant.

© 2009 Business Financial Services, Inc.                    3                    ✳ Merchant Initial: _____

(e) There is no action, suit, claim, investigation or legal or administrative or arbitration proceeding pending or currently threatened whether at law or in equity or before any federal, state, local, foreign or other court, governmental department, commission, board, bureau, agency or instrumentality (collectively, "*Governmental Authorities*") against Merchant.

(f) Merchant is in compliance with all statutes, rules, regulations, orders or restrictions of all applicable Governmental Authorities. All federal, state, local and foreign tax returns and tax reports, and all taxes due and payable arising there from required to by filed by Merchant have been or will be filed and paid, on a timely basis (including any extensions). All such returns and reports are and will be true, correct and complete. Merchant has disclosed to Purchaser in writing all of its material liabilities and, to the best of its knowledge, knows of no material contingent liabilities, except current liabilities incurred in the ordinary course of business consistent with past practice. Merchant's accounts receivable are generated in the ordinary course of the conduct of commerce or business.

(g) Merchant is not the owner of any commercial tort claims as of the date of execution of this Agreement, and to the extent it becomes owner of any commercial tort claims subsequent to the date of this Agreement, it will assign same to Purchaser as Collateral and cooperate with Purchaser and take such actions and execute and deliver such documents as Purchaser shall reasonably request, in perfecting such security interest.

6. Covenants. (a) Merchant shall (i) maintain adequate insurance providing coverage consistent with that ordinarily maintained by similarly situated businesses and (ii) conduct its business consistent with past practice.

(b) Other than Processor, Merchant shall have no credit card terminal or processor in any location giving rise to accounts receivable or, except as otherwise provided in this Section 6, amend in any way or terminate the Processing Agreement, without Purchaser's prior written consent. The Processing Agreement shall remain in effect for a minimum of two (2) years from the date hereof, and, in any case, shall not be terminated by Merchant until the Deposit Balance shall be reduced to zero. Merchant shall not allow any event to occur that could reasonably be expected to adversely affect Merchant's ability to accept debit or credit cards under the Processing Agreement or its customers' use of such cards. Merchant acknowledges and agrees that the Processor may provide Purchaser with Merchant's credit card transaction history.

(c) Promptly upon learning of a Dispute or threatened Dispute, (i) Merchant shall notify Purchaser in writing, and (ii) title to the Purchased Receivables that are the subject of the Dispute shall re-vest in Merchant and any previous reduction of the Deposit Balance with respect to such Purchased Receivables previously credited to Merchant with respect to that Purchased Receivable shall be reversed. Merchant shall indemnify Purchaser from, and hold it harmless in respect of, any losses, liabilities, damages, costs and expenses (including attorneys' and other professionals' fees and expenses) arising out of or incurred in connection with such Dispute.

(d) Merchant agrees that all information about Purchaser disclosed to it at any time in connection with this Agreement, including this Agreement, shall be kept confidential and shall not be directly or indirectly disclosed to any person or entity, except: (x) with Purchaser's prior written consent; (y) as may be required by law; or (z) such information which is or becomes generally available other than as a result of a violation of this provision or any term of this Agreement. In the event of a breach or a threatened breach by Merchant of the provisions of this section, Purchaser shall be entitled to an injunction restraining Merchant from such breach or threatened breach. The obligations set forth in this section shall be continuing and shall survive the termination of this Agreement. Merchant hereby acknowledges that money damages would be insufficient and, in advance agrees to the granting of injunctive relief in the Purchaser's favor without proof of actual damages. In the event that such equitable relief is granted, such remedy or remedies for breach or threatened breach shall not be deemed to be the exclusive remedy or remedies available at law or equity to Purchaser.

(e) As long as the Deposit Balance is greater than zero, the Merchant shall not, without the prior written consent of Purchaser: (i) incur any indebtedness, obligation or liability, contingent or otherwise (other than trade payables incurred in the ordinary course of business and consistent with past practice), (ii) grant, or permit to be created any Lien other than the Security Interest, (iii) merge, combine or consolidate with another entity, which merger, combination or consolidation results in less than 50% of the outstanding voting securities of the resulting entity being owned by the then existing holders of securities of the Merchant (a "*Change of Control*"), (iv) transfer, assign, license, sell, lease or otherwise dispose of all or substantially all of its assets to a Person that is not a wholly-owned subsidiary of the Merchant; provided, that the Merchant shall cause any such subsidiary to comply with the provisions of this Section 6(e), (v) close the Business Account (and the Merchant shall promptly deposit all revenues received in the ordinary course of business in the Business Account), (vi) open or maintain any checking account other than the Business Account, or (vii) take any action to discourage the use of credit cards or to permit any event to occur which could have an adverse effect on the use, acceptance or authorization of credit cards for the purchase of Merchants' goods and/or services, change its arrangements with Processor in any way which is adverse to the Purchaser.

© 2009 Business Financial Services, Inc.                    4                    ✱ Merchant Initial: _____

**Exh. A, p. 16**

7. <u>Events of Default</u>. If one or more of the following events (*"Events of Default"*) shall have occurred and be continuing: (i) the Merchant shall fail to assign any account receivable required by this Agreement to be assigned to Purchaser while the Deposit Balance is greater than zero, or shall fail to pay any fees or any other amount payable under any Transaction Document when due; (ii) the Merchant shall fail to observe or perform any covenant or agreement or any representation, warranty, certification or statement made by the Merchant in, or delivered pursuant to or in connection with, any Transaction Document, shall have been incorrect in any material respect when made (or deemed made); (iii) a judgment or order for the payment of money shall be rendered against the Merchant which shall continue unsatisfied and unstayed for a period of 10 days; (iv) the Merchant undergoes a Change of Control; (v) the Merchant shall commence a voluntary case or other proceeding, or consent to an involuntary case, seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property (collectively, *"Bankruptcy Relief"*), or shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts, or shall fail generally to pay its debts as they become due, or shall take any corporate action to authorize any of the foregoing; (vi) an involuntary case or other proceeding seeking Bankruptcy Relief shall be commenced against the Merchant and shall remain undismissed for a period of 60 days, or an order for relief shall be entered against the Merchant under the federal bankruptcy laws as now or hereafter in effect; or Merchant shall dissolve or liquidate, or be dissolved or liquidated, or cease to legally exist; (vii) the Security Interest shall, for any reason (other than Purchaser's failure to renew a UCC financing statement), cease to be a first priority, perfected security interest in and to any Collateral and such event is not remedied within 5 days of such failure; or (viii) the Merchant shall default under any of the Secured Obligations; *then*, and in every such event, Purchaser (a) may, by written notice to the Merchant, immediately terminate its obligations to purchase accounts receivable under this Agreement, declare the Deposit Balance to be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby irrevocably waived by the Merchant; provided, that in the case of (v) or (vi) above, without any notice to the Merchant or any other act by Purchaser, the Deposit Balance shall become immediately due and repayable by Merchant to Purchaser without presentment, demand, protest or notice of any kind, which are hereby irrevocably waived by the Merchant and (b) shall be entitled to the relief set forth in Section 8(b) and may seek all remedies to which it is entitled by law, equity, or statute, all such remedies being cumulative.

8. <u>Termination</u>. (a) This Agreement, with the exception of Section 6(d) and 14 hereof, shall terminate on the date on which the Deposit Balance is reduced to zero. Notwithstanding anything herein to the contrary, all Purchaser's rights and all of the terms, conditions, and provisions hereof, shall continue until all amounts owing by Merchant under any Transaction Documents have been paid in full.

(b) If any Event of Default occurs, or upon the termination of this Agreement, Merchant shall pay to Purchaser all amounts payable to Purchaser under any Transaction Document, including the Deposit Balance and, including, without limitation, upon the Merchant's breach of any of its obligations under Section 6(b), together with an additional amount equal to the aggregate Purchaser's Commissions calculated in respect of Purchased Receivables that Purchaser would have acquired pursuant to the terms of this Agreement had there been no Event of Default and had the associated accounts receivables become Purchases Receivables under this Agreement, and together with any other amounts then due from Merchant under this Agreement, promptly upon demand by Purchaser. Purchaser may direct Processor, on Merchant's behalf and without Merchant's verification or other act or approval of Merchant, to pay all Merchant's debit or credit card settlements to Purchaser until payment for all unpaid Purchased Receivables, plus reimbursement of Purchaser's expenses (including collection, court and attorney fees), plus interest on all of the above at a rate of fifteen percent (15%) per annum, or the highest rate permitted by applicable law, whichever shall be less, is received by Purchaser. In addition, Purchaser may collect all sums due by debiting any bank account of Merchant by automated clearing house debit.

9. <u>Security Interest</u>. (a) The Merchant grants a security interest in the Collateral to the Purchaser to secure the payment or performance of the Secured Obligations.

(b) (i) The Merchant hereby represents and warrants that (A) the Security Interest constitutes a valid security interest under the UCC securing the Secured Obligations; and (B) when UCC financing statements shall be filed in the appropriate filing office, the Security Interest shall constitute a perfected security interest in the Collateral, prior to all other Liens and rights of others therein and (C) the Merchant has rights in, and marketable title to, the Collateral.

(ii) The Merchant covenants that without the prior written consent of Purchaser and delivery to Purchaser of an appropriate legal opinion of counsel acceptable to Purchaser, it shall not during the term of this Agreement (x) change its name, identity or corporate structure, or change its jurisdiction of organization if the perfected Security Interest shall not thereafter continue to be perfected, or (y) transfer any right, title or interest in any Collateral (including, without limitation, to a subsidiary) if such change would cause the Security Interest in such Collateral to lapse or cease to be perfected.

© 2009 Business Financial Services, Inc.                    5                    ✳ Merchant Initial: _____

**Exh. A, p. 17**

(iii) The Merchant shall, from time to time, at its expense, take such action that may be necessary or desirable, or that Purchaser may reasonably request, in order to create, preserve, perfect, confirm or validate the Security Interest, or to enable Purchaser to exercise or enforce any of its rights, powers and remedies hereunder with respect to any of the Collateral.

(c) In case of the occurrence of any Event of Default and at any time thereafter during its continuance, Purchaser may exercise all rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised). Purchaser may be the purchaser of any or all of the Collateral sold at any public sale. The Merchant will perform all actions as Purchaser in its sole discretion deems necessary or advisable in order that any such sale may be made in compliance with law. Upon any such sale, the Collateral shall be delivered, assigned and transferred to Purchaser. At any such sale, Purchaser shall hold the Collateral free from any claim or right, and the Merchant, to the extent permitted by law, hereby specifically waives all rights of redemption, stay or appraisal which it has or may have under any law now existing or hereafter adopted.

(d) The Merchant hereby irrevocably appoints Purchaser its true and lawful attorney-in-fact, said appointment being coupled with an interest, with full power of substitution, in the name of the Merchant for the sole use and benefit of Purchaser, but at the Merchant's expense, to the extent permitted by law, to exercise, at any time and from time to time while an Event of Default has occurred and is continuing, all of the following powers with respect to all or any of the Collateral: (i) to demand, sue for, collect, receive and give acquittance for any and all monies due or to become due thereon or by virtue thereof; (ii) to settle, compromise, compound, prosecute or defend any action or proceeding with respect thereto; (iii) to sell, transfer, assign or otherwise deal in or with the same or the Proceeds thereof, as if Purchaser were the absolute owner thereof, and (iv) to extend the time of payment of any or all thereof and to make any allowance and other adjustments with reference thereto; provided that Purchaser shall give the Merchant not less than 10 days' prior written notice of the time and place of any sale or other disposition of any of the Collateral, except any Collateral which is perishable, threatens to decline speedily in value or is customarily sold on a recognized market. The Merchant agrees that such notice constitutes "reasonable notification" within the meaning of Section 9-610(b) of the UCC.

10. Further Assurances. Merchant agrees to execute any further documents, instruments, agreements and consents and to take any further actions requested by Purchaser to evidence or perfect the Security Interest granted herein, to maintain the first priority of the Security Interests, or to effectuate the rights granted to Purchaser herein or in any of the Transaction Documents or documents or agreements comprising the Secured Obligations. Merchant shall have possession of the Collateral except where otherwise provided in the Transaction Documents or where Purchaser chooses to perfect its security interest by possession or control.

11. Guaranty. Each Guarantor hereby jointly and severally unconditionally guarantees the (i) full and punctual repayment, under this Agreement, of the Initial Deposit or any Deposit Balance, (ii) the full and punctual payment of all other amounts payable by the Merchant under this Agreement and (iii) the full and punctual performance by Merchant of Merchant's obligation to assign to Purchaser the aggregate amount of Face Amount of Purchased Receivables described in Section 4(b) and (iv) the full and punctual performance of all of Merchant's obligations under the Transaction Documents. Upon the Merchant's breach of any of its obligations under Section 6(b), Guarantor shall forthwith on demand promptly pay Purchaser the amount of the Deposit Balance, together with an additional amount equal to the aggregate Purchaser's Commissions calculated in respect of Purchased Receivables that Purchaser would have acquired pursuant to the terms of this Agreement had the Merchant not violated such covenant and had the associated accounts receivables become Purchased Receivables under this Agreement, and together with any other amounts then due from Merchant under this Agreement, promptly upon demand by Purchaser. The obligations of Guarantor hereunder shall be irrevocable, unconditional and absolute and shall not be released or discharged until the Deposit Balance is reduced to zero and any other amount payable by the Merchant under this Agreement and any other Transaction Documents shall have been paid in full. Guarantor irrevocably waives any requirement that at any time any action be taken by any Person against the Merchant or any other Person. If acceleration of the time for payment of any amount payable under this Agreement or under any Transaction Documents is stayed upon the insolvency, bankruptcy or reorganization of the Merchant, such amount shall nonetheless be payable by Guarantor hereunder forthwith on demand by Purchaser.

12. Waivers by Guarantor. Each Guarantor waives notice of acceptance of the Guaranty contained in this Agreement, notice of any liabilities or obligations including, without limitation, the Secured Obligations, to which it may apply, presentment, demand for payment, protest, notice of dishonor or nonpayment of any liabilities or default by the Merchant, notice of intent to accelerate, notice of acceleration, and notice of any suit or the taking of other action by Purchaser against Merchant, Guarantor or any other person, any applicable statute of limitations and any other notice to any party liable on any document evidencing the Secured Obligations and Transaction Documents (including Guarantor).

Each Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Merchant that arises hereunder and/or from the performance by any other Guarantor hereunder including, without limitation, any claim, right or remedy of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Purchaser against Merchant or against any security which Purchaser now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.  Each Guarantor also waives the benefits of any provision of law requiring that Purchaser exhaust any right or remedy, or take any action, against Merchant, any Guarantor, any other person and/or property including but not limited to the provisions of N.C. Gen. Stat. §25-3-605 and §26-9, inclusive, as amended, or otherwise. This is a guaranty of payment and not of collection.  Purchaser may at any time and from time to time without notice to Guarantor (except as required by law), without incurring responsibility to Guarantor, without impairing, releasing or otherwise affecting the obligations of Guarantor, in whole or in part, and without the endorsement or execution by Guarantor of any additional consent, waiver or guaranty: (a) change the manner, place or terms of payment, or change or extend the time of or renew, any liability or obligation or installment thereof, or any security therefore; (b) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property at any time pledged or mortgaged to secure the liabilities or obligations and any offset there against; (c) exercise or refrain from exercising any rights against Merchant or others (including Guarantor) or act or refrain from acting in any other manner; (d) settle or compromise any liability or obligation or any security therefore and subordinate the payment of all or any part thereof to the payment of any  liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; (e) release or compromise any liability of Guarantor hereunder or any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; or (f) apply any sums from any sources to any liability without regard to any liabilities remaining unpaid.   The phrases "liabilities" and "obligations" as used herein shall include, without limitation, the Secured Obligations and Transaction Documents.

13. Notices. All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery, (b) when sent by confirmed facsimile if sent during normal business hours of the recipient, if not, then on the next Business Day, (c) five (5) Business Days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to such address or facsimile number, in the case of the Merchant, set forth on the first page of this Agreement, and in the case of the Purchaser and the Guarantors, set forth beneath each such party's signature on the signature page hereafter (except in the event that notice is provided by any party hereto in accordance with the terms of this Section 13 that notices hereunder shall be delivered to another address).

14. Survival. All covenants, agreements, representations and warranties made herein shall survive the execution hereof, and shall remain in effect until full performance by Merchant of all the Secured Obligations and shall bind the successors and assigns of the parties hereto.

15. Amendments and Waivers. No modification, amendment or waiver of any provision of, or consent required by, this Agreement, nor any consent to any departure here from, shall be effective unless it is in writing and signed by both the Merchant and the Purchaser.

16. Exclusivity and Waiver of Rights.  No failure to exercise and no delay in exercising on the part of any party, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any other rights or remedies provided by law.

17. Invalidity. Any term or provision of this Agreement shall be ineffective to the extent it is declared invalid or unenforceable, without rendering invalid or enforceable the remaining terms and provisions of this Agreement. The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Agreement or any agreement incorporated herein by reference or referenced herein to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

18. Assignment. This Agreement and the rights and obligations hereunder shall not be assignable or transferable by the Merchant but shall be assignable by the Purchaser without the consent of the Merchant. Any instrument purporting to make an assignment in violation of this Section 18 shall be void.

19. Binds Purchaser's Assignees.  This Agreement shall bind and shall inure to the benefit of the heirs, legatees, executors, administrators, successors and assigns of the Purchaser.

20. Indemnification. In addition to all rights and remedies available to the parties hereto at law or in equity, the Merchant shall indemnify the Purchaser, its Affiliates, and their respective stockholders, officers, directors, employees, agents, successors and assigns (collectively, the "*Indemnified Persons*"), and save and hold each Indemnified Person harmless from and against and pay on behalf of or reimburse each such Indemnified Person, as and when incurred, for any and all loss, liability, demand, claim, action, cause of action, cost, damage, deficiency, tax, penalty, fine or expense, whether or not arising out of any claims by or on behalf of such Indemnified Person or any third party, including without limitation, interest, penalties, reasonable attorneys' fees and expenses and all amounts paid in investigation, defense or settlement of any of the foregoing (including, without limitation, all reasonable attorneys' fees and expenses incurred in connection with the enforcement of this Section 20), that any such Indemnified Person may suffer, sustain, incur or become subject to, as a result of, in connection with, relating or incidental to or by virtue of (i) any misrepresentation or breach of warranty of the Merchant under any of the Transaction Documents, (ii) any nonfulfillment, default or breach of any covenant or agreement of the Merchant in any of the Transaction Documents, or (iii) Purchaser's efforts to enforce any provision of this Agreement.

21. Arbitration.   (a) Notwithstanding anything to the contrary contained herein, any dispute arising out of or in connection with this Agreement shall be settled exclusively and finally by arbitration conducted in the City of Charlotte, North Carolina, under the commercial arbitration rules of the American Arbitration Association (the "*AAA*"), such arbitration to apply the laws of the State of North Carolina (without giving effect to conflict of laws principles).  The arbitrator at such arbitration shall not be entitled to award punitive damages to any party, and the costs and fees of such arbitration shall be borne by the losing party.  The parties hereto acknowledge and agree that this arbitration shall be solely between the parties to this agreement and no class arbitration or other representative action may be undertaken by the arbitrators.  The arbitration shall be conducted by one neutral arbitrator, such arbitrator shall be appointed by the AAA.

(b) Reservation of rights.  Nothing in this arbitration provision shall be deemed to (i) limit the applicability of any otherwise applicable statutes of limitation or repose and any waivers contained in this Agreement; or (ii) be a waiver by the Purchaser of the protection afforded to it by 12 U.S.C. sec. 91 or any substantially equivalent state law; or (iii) limit the right of the Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver.  The Purchaser may exercise such self help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document.  Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

22. Attorneys Fees and Expenses.  Merchant shall pay, on demand, all costs and expenses of collection or defense of any of the Transaction Documents or of any endorsement or guaranty thereof and/or the enforcement or defense of Purchaser's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal, bankruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

23. Applicable Law, Venue and Jurisdiction.  This Agreement and the rights and obligations of the Merchant, the Purchaser and the Guarantors shall be governed by and interpreted in accordance with the law of the State of North Carolina (without giving effect to conflict of laws principles).  If there is any litigation associated with this Agreement, or with any endorsement or guaranty of this Agreement or any Transaction Documents, between or among the Merchant, the Purchaser and the Guarantors (or any of them) that is not immediately subject to arbitration under Section 21 (including, but not limited to, any action to compel arbitration or to confirm an arbitral award), then as to such litigation, each of the foregoing persons irrevocably consents to and hereby confers personal jurisdiction over such person on the courts of the State of North Carolina or of the United States located within the State of North Carolina, and expressly waive any objections as to venue in any such courts. Nothing contained herein shall, however, prevent the Purchaser from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

24. Use of Proceeds.  The Merchant agrees and covenants that the proceeds of this transaction are to be used primarily for business, commercial or agricultural purposes.  The Merchant acknowledges having read and understood, and agrees to be bound by, all terms and conditions of this instrument and hereby executes this Agreement under seal as of the date here above written.

25. Additional Remedies of Purchaser. If (i) a representation or warranty under Section 5 was false when made or no longer remains true, or (ii) a covenant under Section 6 is breached by Merchant, or (iii) an Event of Default occurs, then at Purchaser's election, Purchaser is hereby authorized at any time, at its option and without notice or demand to set off and charge against any deposit accounts of the Merchant (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of the Merchant), which at any time shall come into the possession or custody or under the control of the Purchaser (including, without limitation any "automated clearing house" account or account with the Processor) or any of its agents, Affiliates or correspondents, any and all obligations due hereunder.

26. Processing Fee. The Merchant authorizes, acknowledges and agrees that, in connection with the execution of this Agreement, an investigative or consumer report may be obtained with respect to the Merchant and Guarantor(s). Accordingly, the Merchant and each of Guarantor(s) authorizes the Purchaser, its agents and representatives and any credit reporting agency employed by the Purchaser to investigate any references given or any other statements of data obtained from or about the Merchant or any of its principals for the purpose of this Agreement and to obtain credit reports at any time now or in the future on the Merchant and Guarantor(s). Merchant acknowledges and agrees to pay Purchaser a $200.00 processing fee which will be deducted from the Initial Deposit at funding and which fee will not be credited to the Purchased Receivables. Merchant will be required to sell, transfer and assign to Purchaser the aggregate amount of Face Amount of Purchased Receivables pursuant to Section 4 (b) of this Agreement.

27. Database Disclosure. Merchant acknowledges and agrees that Purchaser may report to third party credit and data reporting agencies, information relating to Merchant's participation in this Accounts Receivable Purchase Agreement ("Transaction"), including without limitation information specifically identifying Merchant and its principals, the amount of the Initial Deposit Amount, Merchant's processing history resulting in payment of Purchased Receivables and other information that third parties would reasonably rely on in evaluating the creditworthiness of the Merchant (the "Transaction Information"). Merchant expressly authorizes Purchaser's disclosure of the Transaction Information as set forth herein, and understands that the Transaction Information will be readily available to merchant cash advance companies and Merchant's potential creditors.

28. Formation. The parties agree and acknowledge that this agreement was made and formed in North Carolina, the Purchaser being the last party to sign this agreement in the State of North Carolina. All payments by Merchant under this agreement are to be made at the following address: 6852 B Faringdon Place, Raleigh, NC 27609.

29. Execution in Counterparts and by Facsimile. This Agreement may be executed in two or more counterparts, by original or facsimile signature, each of which so executed shall be deemed to be an original and such counterparts together shall be deemed to be one and the same instrument.

© 2009 Business Financial Services, Inc.                    9                     ✸ Merchant Initial: _____

In Witness Whereof, the parties have executed this Agreement under seal as of the date first above written.
Merchant: **Captain Bounce, Inc. DBA Captain Bounce**

By: _____(SEAL)*          By: _____(SEAL)*
Name: Sevag Mekari Kalajain                              Name: Samuel Khatomatourian
Title: President                                                    Title: Vice president
Date:                                                                Date:
Guarantor                                                          Guarantor

_____                              _____
Name: Sevag Mekari Kalajain                              Name: Samuel Khatomatourian
Address:               Granada Hills, CA, 91344        Address:              La Crestna, CA, 91214
Telephone:                                                        Telephone:


Business Financial Services, Inc.


By: _____
Name: Susan Rubin
Title: VP
Date:

NOTARY FOR PURCHASER:
STATE OF NORTH CAROLINA                    )
                                                                    )
COUNTY OF WAKE                                    )

        I, _____, a Notary Public of said County and State, certify that _____ personally
came before me this day in the County of Wake, North Carolina, and acknowledged that he/she is _____ of
_____, a corporation, and that he/she, as _____, being authorized to do so, executed the
foregoing on behalf of the corporation.

        Witness my hand and official seal, this the ____ day of _____.


                                        _____
                                                (Signature of Notary Public)

(Notary Seal)
My commission expires: _____

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This Accounts Receivable Purchase Agreement with Security Agreement and Personal Guaranty (**"Agreement"**), dated as of **October 08, 2010** (the **"Issue Date"**), is made by and among Business Financial Services, Inc., a North Carolina corporation (the **"Purchaser"**), and **Tamra Coviello DBA KC Dancegear** (circle one) [corporation / limited liability company/limited partnership/general partnership/sole proprietorship] organized under the laws of the State of **California** located at _____ **Escondido , CA . 92026** (**"Merchant"**), and Tamra Anne Coviello, (**"Guarantor[s]"**).

| Merchant's Information: |
| --- |
| Name: **Tamra Coviello DBA KC Dancegear** |
| Address:                              **Escondido , CA . 92026** |
| Attn: **Tamra Anne Coviello,** |
| Phone: |
| Facsimile: |

| |
| --- |
| Bank Name: **San Diego Credit Union** |
| Account Number: |
| (the **"Business Account"**) |
| Routing Number: |

WHEREAS, Merchant is agreeing to transfer, sell and assign to Purchaser, in accordance with the terms of this Agreement, all of its right, title and interest in a percentage equal to the Settlement Percentage (hereafter defined) of the accounts receivable owed to the Merchant by its Processor (as defined below) that are generated from debit and credit card charges presented by Merchant to Processor, when, if and as such accounts receivable arise out of the sale of goods or rendition of services created in the ordinary course of Merchant's business (the Settlement Percentage of such accounts receivable, the **"Purchased Receivables"**) and to grant to Purchaser a security interest as set forth herein. As a further inducement to Purchaser to assume the obligations described herein, the Guarantors are giving to Purchaser their personal guaranty to the extent described herein; and

WHEREAS, Merchant is presently party to, or simultaneously herewith entering into an agreement in the form annexed hereto as Exhibit A   (a **"Processing Agreement"** and together with this Agreement, and any other agreement or document related to this transaction, the   **"Transaction Documents"**) with a processor (together with any subsequent processor servicing the merchant in accordance with this Agreement the   **"Processor"**) to obtain credit card processing services.

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the sufficiency of which the parties acknowledge, the parties hereto hereby agree as follows:

1. **Definitions.** For the purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below: (i)   **"Affiliate(s)"** means, with respect to any given Person other than a partnership or limited liability company, any other Person directly or indirectly controlling, controlled by or under common control with such Person and with respect to a partnership, the partners of such partnership and with respect to a limited liability company, the members and managers of such limited liability company; (ii)   **"Business Day"** means any day that is not a Saturday, Sunday or a legal holiday in the State of North Carolina on which banking institutions in Charlotte, North Carolina are authorized or obligated by law or executive order to close; (iii) **"Collateral"** shall consist of all of the personal property of the Merchant wherever located, and now owned and hereafter acquired including, without limitation: (a) accounts, including, without limitation, debit or credit card receivables, whether now existing or created in the future; (b) chattel paper; (c) inventory; (d) equipment; (e) instruments, including, without limitation, promissory notes; (f) investment property; (g) documents; (h) deposit accounts; (i) letter of credit rights; (j) general intangibles; (k) supporting obligations; (l) proceeds and products of the foregoing; and (m) commercial tort claims; (iv)   **"Dispute"** shall mean any return, dispute, deduction, claim, offset, defense or counterclaim of any kind arising in connection with or relating to any Purchased Receivable   **"Lien"** means any mortgage, pledge, lien, assignment, security interest or other charge or encumbrance, or any agreement to create a lien; (vi)   **"Person"** means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint stock company, trust or other entity or organization; (vii)   **"Proceed's"** means all proceeds of,

✱ Merchant Initial: _____

and all other profits, products, rents or receipts, in whatever form, arising from the sale, exchange, assignment or other disposition of Collateral; (viii)   *"Secured Obligations"* means (a) Merchant's obligations under the Transaction Documents, including this Agreement; (b) all of Merchant's present and future obligations to Purchaser; (c) the repayment of (i) any amounts that Purchaser may advance or spend for the maintenance or preservation of the Collateral and (ii) any other expenditures that Purchaser may make under the provisions of this Agreement for the benefit of Merchant; (d) all amounts owed by Merchant under any modification, renewals or extensions of any of the foregoing obligations; (e) all other amounts now or in the future owed by Merchant to Purchaser; and (f) any of the foregoing that arises after the filing of a petition by or against Debtor under the Title 11 of the United States Code (the "Bankruptcy Code"), even if such obligation does not accrue because of the automatic stay under Bankruptcy Code §362 or otherwise; (ix)   *"Security Interest"* means the security interest in the Collateral granted hereunder securing the Secured Obligations;  and (x)  *"UCC"* means the Uniform Commercial Code as in effect on the date hereof in the State of North Carolina; provided, that if by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of the Security Interest is governed by the Uniform Commercial Code as in effect in a jurisdiction other than North Carolina,  *"UCC"* means the Uniform Commercial Code as in effect is such other jurisdiction for purposes of the provisions hereof relating to such perfection or effect of perfection or non-perfection. Any term used in the UCC and not defined in this Agreement has the meaning given to the term in the UCC.

          **2. Engagement as Factor.** Merchant hereby engages Purchaser as Merchant's sole factor.

          **3. Risk.** On all Purchased Receivables, Purchaser agrees to assume the risk of any loss that is due solely to the financial inability of Processor to pay such Purchased Receivable pursuant to the Processing Agreement.

          **4. Purchase and Payment Procedure.**

(a) For purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below:

    (i) The *"Bank"* is the bank that is a party to the Processing Agreement.

    (ii) The *"Settlement Amount"*, for any period, is all of Merchant's accounts receivables for debit and credit card charges owing from Processor for such period that comply with the terms of the Processing Agreement and with rules of the applicable card association and with the applicable merchant operating manual, without any deduction including, without limitation, for credits, adjustments, fines, chargebacks or fees which charges become accounts receivable owing from Processor to Merchant.

    (iii) The "**Settlement Percentage**" shall be  **14** %.

    (iv) The *"Initial Deposit"*, to be delivered to Merchant by Purchaser upon the execution of the Transaction Documents, is the sum of  **$5,000.00**, which amount represents the anticipated aggregate Purchase Price of all Purchased Receivables to be sold, transferred and assigned by Merchant to Purchaser under this Agreement.

    (v) The *"Face Amount"*, for each Purchased Receivable, shall mean the face amount of such Purchased Receivable, without deduction for any returns, discounts and credits or allowances of any nature at any time issued, owing, or claimed by Merchant's customers, granted or outstanding and without deduction of any charges, fees or commissions owing to, or claimed by, Processor or Bank, granted or outstanding.

    (vi) The *"Purchase Price"*, calculated for each Purchased Receivable, is the Face Amount of such Purchased Receivable minus the Purchaser's Commission on such Face Amount.

    (vii) The *"Purchaser's Commission"* on any amount is  **7/27 (seven-twenty sevenths)** of that amount.

    (viii) *"Purchaser's Share of Settlement Payments"* for any period shall be equal to: (a) the Settlement Amount *multiplied by* (b) the Settlement Percentage in effect for that period. If the Settlement Percentage shall have changed during the period, the relevant Settlement Percentage shall be equal to the weighted average Settlement Percentage calculated in accordance with the number of days during which any given Settlement Percentage shall have been in effect.

    (ix) The *"Deposit Balance"*, at any point in time, shall be the Initial Deposit minus an amount equal to the aggregate Purchase Price of all Purchased previously transferred, sold and assigned to Purchaser pursuant to this Agreement.

    (x) All defined terms referred to in the Preamble and Recital Paragraphs are incorporated herein by this reference.

(b) **Sale and Assignment to Purchaser** of Accounts Receivable. Merchant hereby agrees to sell, transfer and assign to Purchaser, in consideration of Purchaser's payment of the Purchase Price therefore and in accordance with the terms hereof, an aggregate amount of  **$6,750.00** Face Amount of Purchased Receivables, when, if and as such Purchased Receivables are created by Merchant, immediately upon the creation of such Purchased Receivables in the ordinary course of Merchant's business, in each case free and clear of any Liens immediately upon the creation of any account receivable owed to the Merchant by its Processor, and without any further action by Merchant or by Purchaser, Merchant shall transfer, and assign to Purchaser Purchaser's Share of Settlement Payments in respect of such account receivable.

(c) Payment of Purchase Price by Reduction of Deposit Balance. Upon any sale, transfer and assignment of Purchased Receivables by Merchant to Purchaser, pursuant to Section 4(b), Purchaser shall pay Merchant the aggregate Purchase Price of the Purchased Receivables that Merchant has transferred, sold or assigned to Purchaser for the relevant period through a simultaneous reduction in the Deposit Balance in an amount equal to the Purchase Price for the Purchased Receivables so transferred, sold and assigned during that period. Such amount by which the Deposit Balance shall be reduced shall thereupon become the property of Merchant. Notwithstanding any provision to the contrary in Section 4(b) hereof, if at any time the Deposit Balance is less than the Purchase Price of Purchased Receivables created since the previous payment from Purchaser to Merchant, then Merchant shall only assign, and Purchaser shall only be obligated to pay for, such amount of Purchased Receivables created as the Deposit Balance shall be sufficient to purchase in accordance with Section 4(b) hereof, so as to leave a Deposit Balance of zero (including any purchase that would result in Purchaser only acquiring a portion of an account receivable. The Deposit Balance may not be reduced by any other means, including (but not limited to) a direct cash payment from Merchant to Purchaser, except pursuant to Section 7 or Section 8.

(d) Remittance by Processor of Payments in Respect of Accounts Receivable. Merchant hereby authorizes and directs the Processor to pay to Purchaser the Purchaser's Share of Settlement Payment for every period, without verification from Merchant, until Merchant has assigned to Purchaser Purchased Receivables of aggregate Face Amount in the amount set forth in Section 4(b) and Purchaser shall have received payment in full of all such Purchased Receivables. For avoidance of doubt, in carrying out the direction in this Paragraph 4(d), Processor shall act solely in accordance with Purchaser's instructions to Processor. Such authorization and direction shall be irrevocable without the written consent of Purchaser.

(e) Monthly Statement. Purchaser shall forward Merchant a monthly statement within ten (10) days after the end of each month, which shall conclusively establish, for the purposes of this Agreement, an account stated identifying the Face Amount   for Purchased Receivables, which may specify revised amounts for Purchased Receivables previously purchased by Purchaser that have been subjected to fees, chargebacks, fines, adjustments or other deductions by Processor or Bank. Such statement shall be binding upon Merchant with respect to the matters reflected therein, except to the extent that written exceptions thereto are delivered to Purchaser within ten (10) days after the date of such statement is delivered.

**5. Representations and Warranties of Merchant.** Merchant represents and warrants to Purchaser that on the date hereof and again on each date on which the Deposit Balance is greater than zero, that:

(a) (i)If Merchant is a corporation, limited liability company, limited partnership or general partnership, then it is validly existing and in good standing under the laws of its state of organization; it has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; it has all requisite power and authority to execute and deliver each Transaction Document and to perform all of its obligations and undertakings, and to carry out the transactions contemplated, under each Transaction Document; and the execution and delivery of, and the performance of all obligations of Merchant under, each Transaction Document, have been duly and validly authorized by all necessary action.

(ii) If Merchant is a sole proprietorship, then the natural person who is the sole proprietor has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; and has the full and unrestricted legal capacity to execute and deliver each Transaction Document and to perform all of his or her obligations and undertakings, and to carry out the transactions contemplated, under each Transaction Document.

(b) Each Purchased Receivable is and, at the time of transfer, sale and assignment to Purchaser, will be, bona fide and existing obligations of the Processor or Bank arising out of the sale of goods and/or the rendition of services in the ordinary course of Merchant's business, free and clear of all Liens and security interests, owned by and owing to Merchant Dispute.

(c) Merchant is solvent and fully authorized to assign and sell transfer and assign the Purchased Receivables hereunder.

(d) The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereunder, and compliance with the provisions of each Transaction Document, does not and will not violate the certificate of incorporation, limited liability company certificate, limited liability company agreement, partnership agreement or other organizational document or bylaws of Merchant, (ii) conflict with, or result in any violation, of any applicable law, rule, regulation, judgment, injunction, order or decree, or (iii) conflict with, constitute a default, or entitle any person or entity to receipt of notice or to a right of consent, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit, or to any increased, additional, accelerated or guaranteed rights or entitlement of any person or entity, or result in the creation of any claim on the properties or assets of Merchant, under any provision of any agreement or other instrument binding upon Merchant.

(e) There is no action, suit, claim, investigation or legal or administrative or arbitration proceeding pending or currently threatened whether at law or in equity or before any federal, state, local, foreign or other court, governmental department, commission, board, bureau, agency or instrumentality (collectively, *"Governmental Authorities"*) against Merchant.

(f) Merchant is in compliance with all statutes, rules, regulations, orders or restrictions of all applicable Governmental Authorities. All federal, state, local and foreign tax returns and tax reports, and all taxes due and payable arising there from required to by filed by Merchant have been or will be filed and paid, on a timely basis (including any extensions). All such returns and reports are and will be true, correct and complete. Merchant has disclosed to Purchaser in writing all of its material liabilities and, to the best of its knowledge, knows of no material contingent liabilities, except current liabilities incurred in the ordinary course of business consistent with past practice. Merchant's accounts receivable are generated in the ordinary course of the conduct of commerce or business.

(g) Merchant is not the owner of any commercial tort claims as of the date of execution of this Agreement, and to the extent it becomes owner of any commercial tort claims subsequent to the date of this Agreement, it will assign same to Purchaser as Collateral and cooperate with Purchaser and take such actions and execute and deliver such documents as Purchaser shall reasonably request, in perfecting such security interest.

**6. Covenants.** (a) Merchant shall (i) maintain adequate insurance providing coverage consistent with that ordinarily maintained by similarly situated businesses and (ii) conduct its business consistent with past practice.

(b) Other than Processor, Merchant shall have no credit card terminal or processor in any location giving rise to accounts receivable or, except as otherwise provided in this Section 6, amend in any way or terminate the Processing Agreement, without Purchaser's prior written consent. The Processing Agreement shall remain in effect for a minimum of two (2) years from the date hereof, and, in any case, shall not be terminated by Merchant until the Deposit Balance shall be reduced to zero. Merchant shall not allow any event to occur that could reasonably be expected to adversely affect Merchant's ability to accept debit or credit cards under the Processing Agreement or its customers, use of such cards. Merchant acknowledges and agrees that the Processor may provide Purchaser with Merchant's credit card transaction history.

(c) Promptly upon learning of a Dispute or threatened Dispute, (i) Merchant shall notify Purchaser in writing, and (ii) title to the Purchased Receivables that are the subject of the Dispute shall re-vest in Merchant and any previous reduction of the Deposit Balance with respect to such Purchased Receivable previously credited to Merchant with respect to that Purchased Receivable shall be reversed. Merchant shall indemnify Purchaser from, and hold it harmless in respect of, any losses, liabilities, damages, costs and expenses (including attorneys, and other professionals, fees and expenses) arising out of or incurred in connection with such Dispute.

(d) Merchant agrees that all information about Purchaser disclosed to it at any time in connection with this Agreement, including this Agreement, shall be kept confidential and shall not be directly or indirectly disclosed to any person or entity, except: (x) with Purchaser, prior written consent; (y) as may be required by law; or (z) such information which is or becomes generally available other than as a result of a violation of this provision or any term of this Agreement. In the event of a breach or a threatened breach by Merchant of the provisions of this section, Purchaser shall be entitled to an injunction restraining Merchant from such breach or threatened breach. The obligations set forth in this section shall be continuing and shall survive the termination of this Agreement. Merchant hereby acknowledges that money damages would be insufficient and, in advance agrees to the granting of injunctive relief in the Purchaser's favor without proof of actual damages. In the event that such equitable relief is granted, such remedy or remedies for breach or threatened breach shall not be deemed to be the exclusive remedy or remedies available at law or equity to Purchaser.

(e) As long as the Deposit Balance is greater than zero, the Merchant shall not, without the prior written consent of Purchaser: (i) incur any indebtedness, obligation or liability, contingent or otherwise (other than trade payables incurred in the ordinary course of business and consistent with past practice), (ii) grant, or permit to be created any Lien other than the Security Interest, (iii) merge, combine or consolidate with another entity, which merger, combination or consolidation results in less than 50% of the outstanding voting securities of the resulting entity being owned by the then existing holders of securities of the Merchant (a *"Change of Control"*), (iv) transfer, assign, license, sell, lease or otherwise dispose of all or substantially all of its assets to a Person that is not a wholly-owned subsidiary of the Merchant; provided, that the Merchant shall cause any such subsidiary to comply with the provisions of this Section 6(e), (v) close the Business Account (and the Merchant shall promptly deposit all revenues received in the ordinary course of business in the Business Account), (vi) open or maintain any checking account other than the Business Account,

or (vii) take any action to discourage the use of credit cards or to permit any event to occur which could have an adverse effect on the use, acceptance or authorization of debit and credit cards for the purchase of Merchants, goods and/or services, change its arrangements with Processor in any way which is adverse to the Purchaser.

**7. Events of Default.** If one or more of the following events (*"Events of Default"*) shall have occurred and be continuing: (i) the Merchant shall fail to assign any account receivable required by this Agreement to be assigned to Purchaser while the Deposit Balance is greater than zero; or shall fail to pay any fees or any other amount payable under any Transaction Document when due; (ii) the Merchant shall fail to observe or perform any covenant or agreement or any representation, warranty, certification or statement made by the Merchant in, or delivered pursuant to or in connection with, any Transaction Document, shall have been incorrect in any material respect when made (or deemed made); (iii) a judgment or order for the payment of money shall be rendered against the Merchant which shall continue unsatisfied and unstayed for a period of 10 days; (iv) the Merchant undergoes a Change of Control; (v) the Merchant shall commence a voluntary case or other proceeding, or consent to an involuntary case, seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property (collectively, *"Bankruptcy Relief"*), or shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts, or shall fail generally to pay its debts as they become due, or shall take any corporate action to authorize any of the foregoing; (vi) an involuntary case or other proceeding seeking Bankruptcy Relief shall be commenced against the Merchant and shall remain undismissed for a period of 60 days, or an order for relief shall be entered against the Merchant under the federal bankruptcy laws as now or hereafter in effect; or Merchant shall dissolve or liquidate, or be dissolved or liquidated, or cease to legally exist; (vii) the Security Interest shall, for any reason (other than Purchaser's failure to renew a UCC financing statement), cease to be a first priority, perfected security interest in and to any Collateral and such event is not remedied within 5 days of such failure; or (viii) the Merchant shall default under any of the Secured Obligations;          *then*, and in every such event, Purchaser (a) may, by written notice to the Merchant, immediately terminate its obligations to purchase accounts receivable under this Agreement, declare the Deposit Balance to be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby irrevocably waived by the Merchant; provided, that in the case of (v) or (vi) above, without any notice to the Merchant or any other act by Purchaser, the Deposit Balance shall become immediately due and repayable by Merchant to Purchaser without presentment, demand, protest or notice of any kind, which are hereby irrevocably waived by the Merchant and (b) shall be entitled to the relief set forth in Section 8 (b) and may seek all remedies to which it is entitled by law, equity, or statute, all such remedies being cumulative.

**8. Termination.**   (a) This Agreement, with the exception of Section 6(d) and 14 hereof, shall terminate on the date on which the Deposit Balance is reduced to zero. Notwithstanding anything herein to the contrary, all Purchaser's rights and all of the terms, conditions, and provisions hereof, shall continue until all amounts owing by Merchant under any Transaction Documents have been paid in full.

(b) If any Event of Default occurs, or upon the termination of this Agreement, Merchant shall pay to Purchaser all amounts payable to Purchaser under any Transaction Document, including the Deposit Balance and, including, without limitation, upon the Merchant's breach of any of its obligations under Section 6(b), together with an additional amount equal to the aggregate Purchaser's Commissions calculated in respect of Purchased Receivables that Purchaser would have acquired pursuant to the terms of this Agreement had there been no Event of Default and had the associated accounts receivables become Purchases Receivables under this Agreement, and together with any other amounts then due from Merchant under this Agreement, promptly upon demand by Purchaser. Purchaser may direct Processor, on Merchant's behalf and without Merchant's verification or other act or approval of Merchant, to pay all Merchant's debit and credit card settlements to Purchaser until payment for all unpaid Purchased Receivables, plus reimbursement of Purchaser's expenses (including collection, court and attorney fees), plus interest on all of the above at a rate of fifteen percent (15%) per annum, or the highest rate permitted by applicable law, whichever shall be less, is received by Purchaser. In addition, Purchaser may collect all sums due by debiting any bank account of Merchant by automated clearing house debit.

**9. Security Interest.** (a) The Merchant grants a security interest in the Collateral to the Purchaser to secure the payment or performance of the Secured Obligations.

(b) (i) The Merchant hereby represents and warrants that (A) the Security Interest constitutes a valid security interest under the UCC securing the Secured Obligations; and (B) when UCC financing statements shall be filed in the appropriate filing office, the Security Interest shall constitute a perfected security interest in the Collateral, prior to all other Liens and rights of others therein and (C) the Merchant has rights in, and marketable title to, the Collateral.

(ii) The Merchant covenants that without the prior written consent of Purchaser and delivery to Purchaser of an appropriate legal opinion of counsel acceptable to Purchaser, it shall not during the term of this Agreement (x) change its name, identity or corporate structure, or change its jurisdiction of organization if the perfected Security Interest shall not thereafter continue to be perfected, or (y) transfer any right, title or interest in any Collateral (including, without limitation, to a subsidiary) if such change would cause the Security Interest in such Collateral to lapse or cease to be perfected.

(iii) The Merchant shall, from time to time, at its expense, take such action that may be necessary or desirable, or that Purchaser may reasonably request, in order to create, preserve, perfect, confirm or validate the Security Interest, or to enable Purchaser to exercise or enforce any of its rights, powers and remedies hereunder with respect to any of the Collateral.

(c) In case of the occurrence of any Event of Default and at any time thereafter during its continuance, Purchaser may exercise all rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised). Purchaser may be the purchaser of any or all of the Collateral sold at any public sale. The Merchant will perform all actions as Purchaser in its sole discretion deems necessary or advisable in order that any such sale may be made in compliance with law.

Upon any such sale, the Collateral shall be delivered, assigned and transferred to Purchaser. At any such sale, Purchaser shall hold the Collateral free from any claim or right, and the Merchant, to the extent permitted by law, hereby specifically waives all rights of redemption, stay or appraisal which it has or may have under any law now existing or hereafter adopted.

(d) The Merchant hereby irrevocably appoints Purchaser its true and lawful attorney-in-fact, said appointment being coupled with an interest, with full power of substitution, in the name of the Merchant for the sole use and benefit of Purchaser, but at the Merchant's expense, to the extent permitted by law, to exercise, at any time and from time to time while an Event of Default has occurred and is continuing, all of the following powers with respect to all or any of the Collateral: (i) to demand, sue for, collect, receive and give acquittance for any and all monies due or to become due thereon or by virtue thereof; (ii) to settle, compromise, compound, prosecute or defend any action or proceeding with respect thereto; (iii) to sell, transfer, assign or otherwise deal in or with the same or the Proceeds thereof, as if Purchaser were the absolute owner thereof, and (iv) to extend the time of payment of any or all thereof and to make any allowance and other adjustments with reference thereto; provided that Purchaser shall give the Merchant not less than 10 days, prior written notice of the time and place of any sale or other disposition of any of the Collateral, except any Collateral which is perishable, threatens to decline speedily in value or is customarily sold on a recognized market. The Merchant agrees that such notice constitutes "reasonable notification" within the meaning of Section 9-610(b) of the UCC.

**10. Further Assurances.** Merchant agrees to execute any further documents, instruments, agreements and consents and to take any further actions requested by Purchaser to evidence or perfect the Security Interest granted herein, to maintain the first priority of the Security Interests, or to effectuate the rights granted to Purchaser herein or in any of the Transaction Documents or documents or agreements comprising the Secured Obligations. Merchant shall have possession of the Collateral except where otherwise provided in the Transaction Documents or where Purchaser chooses to perfect its security interest by possession or control.

**11. Guaranty.** Each Guarantor hereby jointly and severally unconditionally guarantees the (i) full and punctual repayment, under this Agreement, of the Initial Deposit or any Deposit Balance, (ii) the full and punctual payment of all other amounts payable by the Merchant under this Agreement and (iii) the full and punctual performance by Merchant of Merchant's obligation to assign to Purchaser the aggregate amount of Face Amount of Purchased Receivables described in Section 4(b) and (iv) the full and punctual performance of all of Merchant's obligations under the Transaction Documents. Upon the Merchant's breach of any of its obligations under Section 6(b), Guarantor shall forthwith on demand promptly pay Purchaser the amount of the Deposit Balance, together with an additional amount equal to the aggregate Purchaser's Commissions calculated in respect of Purchased Receivables that Purchaser would have acquired pursuant to the terms of this Agreement had the Merchant not violated such covenant and had the associated accounts receivables become Purchased Receivables under this Agreement, and together with any other amounts then due from Merchant under this Agreement, promptly upon demand by Purchaser. The obligations of Guarantor hereunder shall be irrevocable, unconditional and absolute and shall not be released or discharged until the Deposit Balance is reduced to zero and any other amount payable by the Merchant under this Agreement and any other Transaction Documents shall have been paid in full. Guarantor irrevocably waives any requirement that at any time any action be taken by any Person against the Merchant or any other Person. If acceleration of the time for payment of any amount payable under this Agreement or under any Transaction Documents is stayed upon the insolvency, bankruptcy or reorganization of the Merchant, such amount shall nonetheless be payable by Guarantor hereunder forthwith on demand by Purchaser.

**Exh. A, p. 28**

**12. Waivers by Guarantor.** Each Guarantor waives notice of acceptance of the Guaranty contained in this Agreement, notice of any liabilities or obligations including, without limitation, the Secured Obligations, to which it may apply, presentment, demand for payment, protest, notice of dishonor or nonpayment of any liabilities or default by the Merchant, notice of intent to accelerate, notice of acceleration, and notice of any suit or the taking of other action by Purchaser against Merchant, Guarantor or any other person, any applicable statute of limitations and any other notice to any party liable on any document evidencing the Secured Obligations and Transaction Documents (including Guarantor).

Each Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Merchant that arises hereunder and/or from the performance by any other Guarantor hereunder including, without limitation, any claim, right or remedy of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Purchaser against Merchant or against any security which Purchaser now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise. Each Guarantor also waives the benefits of any provision of law requiring that Purchaser exhaust any right or remedy, or take any action, against Merchant, any Guarantor, any other person and/or property including but not limited to the provisions of N.C. Gen. Stat. §25-3-605 and §26-7 through §26-9, inclusive, as amended, or otherwise. This is a guaranty of payment and not of collection. Purchaser may at any time and from time to time without notice to Guarantor (except as required by law), without incurring responsibility to Guarantor, without impairing, releasing or otherwise affecting the obligations of Guarantor, in whole or in part, and without the endorsement or execution by Guarantor of any additional consent, waiver or guaranty: (a) change the manner, place or terms of payment, or change or extend the time of or renew, any liability or obligation or installment thereof, or any security therefore; (b) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property at any time pledged or mortgaged to secure the liabilities or obligations and any offset there against; (c) exercise or refrain from exercising any rights against Merchant or others (including Guarantor) or act or refrain from acting in any other manner; (d) settle or compromise any liability or obligation or any security therefore and subordinate the payment of all or any part thereof to the payment of any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; (e) release or compromise any liability of Guarantor hereunder or any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; or (f) apply any sums from any sources to any liability without regard to any liabilities remaining unpaid. The phrases "liabilities" and "obligations" as used herein shall include, without limitation, the Secured Obligations and Transaction Documents.

**13. Notices.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery, (b) when sent by confirmed facsimile if sent during normal business hours of the recipient, if not, then on the next Business Day, (c) five (5) Business Days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to such address or facsimile number, in the case of the Merchant, set forth on the first page of this Agreement, and in the case of the Purchaser and the Guarantors, set forth beneath each such party's signature on the signature page hereafter (except in the event that notice is provided by any party hereto in accordance with the terms of this Section 13 that notices hereunder shall be delivered to another address).

**14. Survival.** All covenants, agreements, representations and warranties made herein shall survive the execution hereof, and shall remain in effect until full performance by Merchant of all the Secured Obligations and shall bind the successors and assigns of the parties hereto.

**15. Amendments and Waivers.** No modification, amendment or waiver of any provision of, or consent required by, this Agreement, nor any consent to any departure here from, shall be effective unless it is in writing and signed by both the Merchant and the Purchaser.

**16. Exclusivity and Waiver of Rights.** No failure to exercise and no delay in exercising on the part of any party, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any other rights or remedies provided by law.

**17. Invalidity.** Any term or provision of this Agreement shall be ineffective to the extent it is declared invalid or unenforceable, without rendering invalid or enforceable the remaining terms and provisions of this Agreement. The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Agreement or any agreement incorporated herein by reference or referenced herein to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

**18. Assignment.** This Agreement and the rights and obligations hereunder shall not be assignable or transferable by the Merchant but shall be assignable by the Purchaser without the consent of the Merchant. Any instrument purporting to make an assignment in violation of this Section 18 shall be void.

**19. Binds Purchaser's Assignees.** This Agreement shall bind and shall inure to the benefit of the heirs, legatees, executors, administrators, successors and assigns of the Purchaser.

**20. Indemnification.** In addition to all rights and remedies available to the parties hereto at law or in equity, the Merchant shall indemnify the Purchaser, its Affiliates, and their respective stockholders, officers, directors, employees, agents, successors and assigns (collectively, the **"Indemnified Persons"**), and save and hold each Indemnified Person harmless from and against and pay on behalf of or reimburse each such Indemnified Person, as and when incurred, for any and all loss, liability, demand, claim, action, cause of action, cost, damage, deficiency, tax, penalty, fine or expense, whether or not arising out of any claims by or on behalf of such Indemnified Person or any third party, including without limitation, interest, penalties, reasonable attorneys' fees and expenses and all amounts paid in investigation, defense or settlement of any of the foregoing (including, without limitation, all reasonable attorneys' fees and expenses incurred in connection with the enforcement of this Section (20), that any such Indemnified Person may suffer, sustain, incur or become subject to, as a result of, in connection with, relating to or incidental to or by virtue of any misrepresentation or breach of warranty of the Merchant under any of the Transaction Documents, (ii) any nonfulfillment, default or breach of any covenant or agreement of the Merchant in any of the Transaction Documents, or (iii) Purchaser's efforts to enforce any provision of this Agreement.

**21. Arbitration.** (a) Notwithstanding anything to the contrary contained herein, any dispute arising out of or in connection with this Agreement shall be settled exclusively and finally by arbitration conducted in the City of Charlotte, North Carolina, under the commercial arbitration rules of the American Arbitration Association (the **"AAA"**), such arbitration to apply the laws State of North Carolina (without giving effect to conflict of laws principles). The arbitrator at such arbitration shall not be entitled to award punitive damages to any party, and the costs and fees of such arbitration shall be borne by the losing party. The parties hereto acknowledge and agree that this arbitration shall be solely between the parties to this agreement and no class arbitration or other representative action may be undertaken by the arbitrators. The arbitration shall be conducted by one neutral arbitrator, such arbitrator shall be appointed by the AAA. (b) Reservation of rights. Nothing in this arbitration provision shall be deemed to (i) limit the applicability of any otherwise applicable statutes of limitation or repose and any waivers contained in this Agreement; or (ii) be a waiver by the Purchaser of the protection afforded to it by 12 U.S.C. sec. 91 or any substantially equivalent state law; or (iii) limit the right of the Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, write of possession or the appointment of a receiver. The Purchaser may exercise such self help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document. Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

**22. Attorneys Fees and Expenses.** Merchant shall pay, on demand, all costs and expenses of collection or defense of any of the Transaction Documents or of any endorsement or guaranty thereof and/or the enforcement or defense of Purchaser's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal, bankruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

**23. Applicable Law, Venue and Jurisdiction.** This Agreement and the rights and obligations of the Merchant, the Purchaser and the Guarantors shall be governed by and interpreted in accordance with the law of the State of North Carolina (without giving effect to conflict of laws principles). If there is any litigation associated with this Agreement, or with any endorsement or guaranty of this Agreement or any Transaction Documents, between or among the Merchant, the Purchaser and the Guarantors (or any of them) that is not immediately subject to arbitration under Section 21 (including, but not limited to, any action to compel arbitration or to confirm an arbitral award), then as to such litigation, each of the foregoing persons irrevocably consents to and hereby confers personal jurisdiction over such person on the courts of the State of North Carolina or of the United States located within the State of North Carolina, and expressly waive any objections as to venue in any such courts. Nothing contained herein shall, however, prevent the Purchaser from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

**24. Use of Proceeds.** The Merchant agrees and covenants that the proceeds of this transaction are to be used primarily for business, commercial or agricultural purposes. The Merchant acknowledges having read and understood, and agrees to be bound by, all terms and conditions of this instrument and hereby executes this Agreement under seal as of the date here above written.

**25. Additional Remedies of Purchaser.** If (i) a representation or warranty under Section 5 was false when made or no longer remains true, or (ii) a covenant under Section 6 is breached by Merchant, or (iii) an Event of Default occurs, then at Purchaser's election, Purchaser is hereby authorized at any time, at its option and without notice or demand to set off and charge against any deposit accounts of the Merchant (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of the Merchant), which at any time shall come into the possession or custody or under the control of the Purchaser (including, without limitation any "automated clearing house" account or account with the Processor) or any of its agents, Affiliates or correspondents, any and all obligations due hereunder.

**26. Processing Fee.** The Merchant authorizes, acknowledges and agrees that, in connection with the execution of this Agreement, an investigative or consumer report may be obtained with respect to the Merchant and Guarantor(s). Accordingly, the Merchant and each of Guarantor(s) authorizes the Purchaser, its agents and representatives and any credit reporting agency employed by the Purchaser to investigate any references given or any other statements of data obtained from or about the Merchant or any of its principals for the purpose of this Agreement and to obtain credit reports at any time now or in the future on the Merchant and Guarantor(s). Merchant acknowledges and agrees to pay Purchaser a $275.00 processing fee ($475.00 for Initial Deposits greater than $40,000.00) which will be deducted from the Initial Deposit at funding and which fee will not be credited to the Purchased Receivables. Additionally, for Account Receivable Purchase Agreements utilizing a Lock Box account, a $250.00 set up fee will be deducted from the initial Deposit at funding and will not be credited to Purchased receivables. Merchant will be required to sell, transfer and assign to Purchaser the aggregate amount of Face Amount of Purchased Receivables pursuant to Section 4 (b) of this Agreement.

**27. Database Disclosure.** Merchant acknowledges and agrees that Purchaser may report to third party credit and data reporting agencies, information relating to Merchant's participation in this Accounts Receivable Purchase Agreement ("Transaction"), including without limitation information specifically identifying Merchant and its principals, the amount of the Initial Deposit Amount, Merchant's processing history resulting in payment of Purchased Receivables and other information that third parties would reasonably rely on in evaluating the creditworthiness of the Merchant (the "Transaction Information"). Merchant expressly authorizes Purchaser's disclosure of the Transaction Information as set forth herein, and understands that the Transaction Information will be readily available to merchant cash advance companies and Merchant's potential creditors.

**28. Formation.** The parties agree and acknowledge that this agreement was made and formed in North Carolina, the Purchaser being the last party to sign this agreement in the State of North Carolina. All payments by Merchant under this agreement are to be made at the following address: 5852 B Faringdon Place, Raleigh, NC 27609.

**29. Execution in Counterparts and by Facsimile.** This Agreement may be executed in two or more counterparts, by original or facsimile signature, each of which so executed shall be deemed to be an original and such counterparts together shall be deemed to be one and the same instrument.

© 2010 Business Financial Services, Inc.

9

❋ Merchant Initial: _____

In Witness Whereof, the parties have executed this Agreement under seal as of the date first above written.
Merchant: **Tamra Coviello DBA KC Dancegear**

By: ✱ _____(SEAL)✱
Name: Tamra Anne Coviello
Title: Owner
Date:
Guarantor


✱ _____
Name: Tamra Anne Coviello
Address:                    Escondido, CA , 92027
Telephone:


Business Financial Services, Inc.


By: _____
Name: Susan Rubin
Title: VP
Date:

NOTARY FOR PURCHASER:

STATE OF NORTH CAROLINA (COUNTY OF WAKE) I, _____, a Notary Public of said
County and State, certify that _____ personally came before me this day in the County of
Wake, North Carolina, and acknowledged that he/she is _____ of
_____, a corporation, and that he/she, as _____, being
authorized to do so, executed the foregoing on behalf of the corporation.

Witness my hand and official seal, this the _____ day of _____.


_____
(Signature of Notary Public)
(Notary Seal)
My commission expires: _____

1  JAMES F. CLAPP (145814)
   jclapp@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART CLAPP & COVENEY, LLP
   4370 La Jolla Village Drive, Suite 970
4  San Diego, California  92122-1253
   Tel:  858-623-4200
5  Fax: 858-623-4299

6  J. DANIEL HOLSENBACK (145640)
   dan@holsenbackapc.com
7  HOLSENBACK APC
   4370 La Jolla Village Drive, Suite 970
8  San Diego, CA 92122-1253
   Telephone: 619-269-4634
9  Facsimile: 619-269-4635

10  Attorneys for Plaintiffs

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12         IN AND FOR THE COUNTY OF SAN DIEGO – NORTH COUNTY

13

14  CAPTAIN BOUNCE, INC., SEVAG          CASE NO. 37-2011-00052329-CU-BT-NC
    KALAJAIN, SAMUEL
15  KHATOMATOURIAN, and TAMRA            PROOF OF SERVICE OF SUMMONS ON
    COVIELLO dba KC DANCEGEAR,           BUSINESS FINANCIAL SERVICES, INC.;
16  individually and on behalf of all others   BUSINESS CASH ADVANCE, INC.; and
    similarly situated,                  FATON, INC.
17
            Plaintiffs,
18
    vs.
19
    BUSINESS FINANCIAL SERVICES, INC.,
20  BUSINESS CASH ADVANCE, INC.,
    FATON, INC., and DOES 1 through 50,
21
            Defendants.
22

23

24

25

26

27

28

                                          1
FILING OF ORIGINAL PROOF OF SERVICE OF SUMMONS ON DEFENDANTS       **Exh. A, p. 33**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| James F. Clapp (145814);  Zach P. Dostart (255071) | |

DOSTART CLAPP & COVENEY LLP
4370 La Jolla Village Dr., Ste. 970
San Diego, CA 92122
TELEPHONE NO.: 858-623-4200     FAX NO. *(Optional):* 858-623-4299
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*  Plaintiffs Captain Bounce, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS:  325 S. Melrose
MAILING ADDRESS:
CITY AND ZIP CODE:  Vista, CA 92081
BRANCH NAME:  North County

PLAINTIFF/PETITIONER: Captain Bounce, et al.

DEFENDANT/RESPONDENT: Business Financial Services, Inc., et al.

CASE NUMBER:
37-2011-00052329-CU-BT-NC

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:
15190-00001 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒  summons
   b. ☒  complaint
   c. ☒  Alternative Dispute Resolution (ADR) package
   d. ☒  Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐  cross-complaint
   f. ☒  other *(specify documents):* Notice of Case Assignment

3. a. Party served *(specify name of party as shown on documents served):* Business Financial Services, Inc.

   b. ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      c/o Charles F. Barone, Registered Agent

4. Address where the party was served: 570 Williamson Road, Suite A, Mooresville, NC 28117

5. I served the party (check proper box)
   a. ☐  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*     (2) at *(time):*
   b. ☐  **by substituted service.** On *(date):*     at *(time):*     I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*     from *(city):*     or ☐ a declaration of mailing is attached.

      (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure, § 417.10

**Exh. A, p. 34**

| PLAINTIFF/PETITIONER: Captain Bounce, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Business Financial Services, Inc., et al. | 37-2011-00052329-CU-BT-NC |

5.  c. ☒  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*: March 14, 2011     (2) from *(city)*: San Diego

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☒  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐   **by other means** *(specify means of service and authorizing code section):*

       ☐   Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐  as an individual defendant.
  b. ☐  as the person sued under the fictitious name of *(specify)*:
  c. ☐  as occupant.
  d. ☒  On behalf of *(specify)*: Business Financial Services, Inc.
    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)     ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)     ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)     ☐ 415.46 (occupant)
                                    ☐ other:

7.  **Person who served papers**
  a.  Name: Teri L. Zaayer
  b.  Address: 4370 La Jolla Village Dr., Ste. 970, San Diego, CA 92122
  c.  Telephone number: 858-623-4200
  d.  **The fee for service was: $**
  e.  I am:
    (1) ☒  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐  a registered California process server.
      (i)  ☐  owner  ☐  employee  ☐  independent contractor.
      (ii)  Registration No.:
      (iii)  County:

8.  ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐   **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

Date: *4/6/11*

Teri L. Zaayer                      ▶
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkflow.com

**Exh. A, p. 35**



SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Business Financial Services, Inc.
c/o Charles F. Barone
Registered Agent
570 Williamson Rd., Ste A
Mooresville, NC 28117

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X *Deni Kone*          ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)      C. Date of Delivery
*Denise Kone*

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
   (Transfer from service label)
   7010 3090 0002 1025 2282

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

DOSTART CLAPP & COVENEY, LLP
4370 LA JOLLA VILLAGE DRIVE, SUITE 970
SAN DIEGO, CA 92122-1253

TLZ

**Exh. A, p. 36**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| James F. Clapp (145814);  Zach P. Dostart (255071)<br>DOSTART CLAPP & COVENEY LLP<br>4370 La Jolla Village Dr., Ste. 970<br>San Diego, CA 92122<br>　　TELEPHONE NO.: 858-623-4200　　FAX NO. *(Optional)*: 858-623-4299<br>E-MAIL ADDRESS *(Optional)*:<br>　　ATTORNEY FOR *(Name)*: Plaintiffs Captain Bounce, et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
　STREET ADDRESS: 325 S. Melrose
　MAILING ADDRESS:
　CITY AND ZIP CODE: Vista, CA 92081
　BRANCH NAME: North County

| PLAINTIFF/PETITIONER: Captain Bounce, et al. | CASE NUMBER:<br>37-2011-00052329-CU-BT-NC |
|---|---|
| DEFENDANT/RESPONDENT: Business Financial Services, Inc., et al. | |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>15190-00001 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒　summons
   b. ☒　complaint
   c. ☒　Alternative Dispute Resolution (ADR) package
   d. ☒　Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐　cross-complaint
   f. ☒　other *(specify documents)*: Notice of Case Assignment

3. a. Party served *(specify name of party as shown on documents served)*: Business Cash Advance, Inc.

   b. ☒　Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*: c/o Marc Glazer, Registered Agent
4. Address where the party was served: 3111 N University Drive, Ste. 800, Coral Springs, FL 33071

5. I served the party (check proper box)
   a. ☐　**by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:　　　　　(2) at *(time)*:
   b. ☐　**by substituted service.** On *(date)*:　　　at *(time)*:　　　I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

   　　(1) ☐　**(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   　　(2) ☐　**(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   　　(3) ☐　**(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   　　(4) ☐　I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:　　　from *(city)*:　　　**or** ☐　a declaration of mailing is attached.
   　　(5) ☐　I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure, § 417.10 |
|---|---|---|---|

Exh. A, p. 37

| PLAINTIFF/PETITIONER: Captain Bounce, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Business Financial Services, Inc., et al. | 37-2011-00052329-CU-BT-NC |

5.  c.  ☒  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):* March 14, 2011    (2) from *(city):* San Diego

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) *(Code Civ. Proc., § 415.30.)*

    (4) ☒  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of *(specify):*
  c.  ☐  as occupant.
  d.  ☒  On behalf of *(specify):* Business Cash Advance, Inc.
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**
  a.  Name: Teri L. Zaayer
  b.  Address: 4370 La Jolla Village Dr., Ste. 970, San Diego, CA 92122
  c.  Telephone number: 858-623-4200
  d.  The fee for service was: $
  e.  I am:
    (1) ☒  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐  a registered California process server:
      (i)  ☐ owner  ☐ employee  ☐ independent contractor.
      (ii)  Registration No.:
      (iii)  County:

8.  ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: *4/6/11*

Teri L. Zaayer
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)    ▶    (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkflow.com

Exh. A, p. 38

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   *Tedra North*   C. Date of Delivery  3/17/11

1. Article Addressed to:

*Business Cash Advance Inc*
*c/o Marc Glazer*
*Registered Agent*
*3111 N University Dr. Ste 800*
*Coral Springs FL 33071*

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)   7010 3090 0002 1025 2275

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

DOSTART CLAPP & COVENEY, LLP
4370 LA JOLLA VILLAGE DRIVE, SUITE 970
SAN DIEGO, CA 92122-1253

*TLZ*

**Exh. A, p. 39**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| James F. Clapp (145814);  Zach P. Dostart (255071) DOSTART CLAPP & COVENEY LLP 4370 La Jolla Village Dr., Ste. 970 San Diego, CA 92122 TELEPHONE NO.: 858-623-4200   FAX NO. *(Optional)*: 858-623-4299 E-MAIL ADDRESS *(Optional)*: ATTORNEY FOR *(Name)*:  Plaintiffs Captain Bounce, et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS:  325 S. Melrose
MAILING ADDRESS:
CITY AND ZIP CODE:  Vista, CA 92081
BRANCH NAME:  North County

| PLAINTIFF/PETITIONER: Captain Bounce, et al. DEFENDANT/RESPONDENT: Business Financial Services, Inc., et al. | CASE NUMBER: 37-2011-00052329-CU-BT-NC |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 15190-00001 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒  summons
   b. ☒  complaint
   c. ☒  Alternative Dispute Resolution (ADR) package
   d. ☒  Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐  cross-complaint
   f. ☒  other *(specify documents)*: Notice of Case Assignment

3. a. Party served *(specify name of party as shown on documents served)*: Faton, Inc.

   b. ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      c/o Michael I Keyes, Registered Agent

4. Address where the party was served: 2200 Museum Tower, 150 W Flagler Street, Miami, FL 33130

5. I served the party (check proper box)
   a. ☐  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:                    (2) at *(time)*:
   b. ☐  **by substituted service.** On *(date)*:          at *(time)*:          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:          from *(city)*:          or ☐ a declaration of mailing is attached.

      (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: Captain Bounce, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Business Financial Services, Inc., et al. | 37-2011-00052329-CU-BT-NC |

5. c. ☒ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):* March 14, 2011   (2) from *(city):* San Diego

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☒ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* Faton, Inc.
under the following Code of Civil Procedure section:

☒ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)  ☐ 416.90 (authorized person)
☐ 416.50 (public entity)          ☐ 415.46 (occupant)
☐ other:

7. **Person who served papers**
a. Name: Teri L. Zaayer
b. Address: 4370 La Jolla Village Dr., Ste. 970, San Diego, CA 92122
c. Telephone number: 858-623-4200
d. **The fee for service was: $**
e. I am:

(1) ☒ not a registered California process server.
(2) ☐ exempt from registration under Business and Professions Code section 22350(b).
(3) ☐ a registered California process server:
(i) ☐ owner ☐ employee ☐ independent contractor.
(ii) Registration No.:
(iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: *4/6/11*

Teri L. Zaayer                                      ▶ *(signature)*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                              (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkflow.com

Exh. A, p. 41

USPS - Track & Confirm


**UNITED STATES POSTAL SERVICE**®

Track & Confirm        FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7010 3090 0002 1025 2268
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 9:33 am on March 17, 2011 in MIAMI, FL 33101.

---

**Track & Confirm**

Enter Label/Receipt Number.

( Go > )

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   **Go >**

---

---

**U.S. Postal Service**
**CERTIFIED MAIL** · **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | 2.07 |
| Certified Fee | | 2.80 |
| Return Receipt Fee (Endorsement Required) | | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | | 4.50 |
| Total Postage & Fees | $ | 11.67 |

Postmark Here

Sent To *Faton, Inc.*
Street, Apt. No.; or PO Box No. *150 W Flagler St*
City, State, ZIP+4 *Miami FL 33130*

7010 3090 0002 1025 2268