JAMES F. CLAPP (145814)
jclapp@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
San Diego, California 92122-1253
Tel: 858-623-4200
Fax: 858-623-4299

J. DANIEL HOLSENBACK (145640)
dan@holsenbackapc.com
HOLSENBACK APC
4370 La Jolla Village Drive, Suite 970
San Diego, CA 92122-1253
Telephone: 619-269-4634
Facsimile: 619-269-4635

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN BOUNCE, INC., SEVAG KALAJAIN, SAMUEL KHATOMATOURIAN, and TAMRA COVIELLO dba KC DANCEGEAR, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BUSINESS FINANCIAL SERVICES, INC., BUSINESS CASH ADVANCE, INC., FATON, INC., and DOES 1 through 50, <br><br> Defendants. | CASE NO. 3:11-cv-0858-JLS-WMC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ACTION AND COMPEL ARBITRATION** <br><br> DATE: June 24, 2011 <br> TIME: 3:00 p.m. <br> CTRM: 6 (3rd floor) <br><br> Hon. Janis L. Sammartino |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION..................................................................................................... 1

III.    THE COURT SHOULD APPLY CALIFORNIA LAW IN DECIDING
        WHETHER THE CONTRACT IS UNCONSCIONABLE.................................... 5

IV.     THE ARBITRATION CLAUSE IS PROCEDURALLY AND SUBSTANTIVELY
        UNCONSCIONABLE UNDER CALIFORNIA LAW ........................................ 7

        A.      The Arbitration Clause Is Procedurally Unconscionable. ......................... 7

        B.      The Arbitration Clause Is Substantively Unconscionable....................... 11

                1.      The Lack of Mutuality is Unconscionable. .................................. 12

                2.      BFS's Unilateral Right to Exercise Self-Help Is Unconscionable. ............. 14

                3.      The Venue Selection Clause Is Unconscionable......................... 15

                4.      The "Loser Pays" Provision Is Unconscionable. ........................ 17

                5.      The Limitation on Punitive Damages Is Unconscionable........................... 18

V.      THE COURT SHOULD REFUSE TO ENFORCE THE ARBITRATION
        CLAUSE ............................................................................................................. 19

                1.      The Arbitration Clause Contains Multiple Unconscionable Terms. ........... 20

                2.      The Court Would Need to Rewrite the Contract......................... 20

                3.      BFS Inserted the Unconscionable Terms in Bad Faith. .............................. 23

                4.      Refusing Arbitration Would Promote the Interests of Justice..................... 24

VI.     THE CLASS ACTION WAIVER IS INAPPLICABLE.................................... 24

VII.    CONCLUSION ................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

Allied-Bruce Terminix Companies, Inc. v. Dobson
513 U.S. 265 (1995) ............................................................................................. 3

AT&T Mobility LLC v. Concepcion
563 U.S. ___, 2011 U.S. Lexis 3367 (April 27, 2011)................................. passim

Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.
622 F.3d 996 (9th Cir. 2010)....................................................................... passim

Circuit City Stores v. Adams
279 F.3d 889 (9th Cir. 2002)....................................................................... passim

Comb v. Paypal, Inc.
218 F.Supp.2d 1165 (N.D. Cal. 2002) .............................................................. 16

Cox v. Ocean View Hotel Corp.
533 F.3d 1114 (9th Cir. 2008)............................................................................. 3

Davis v. O'Melveny & Myers
485 F.3d 1066 (9th Cir. 2007)................................................................... 9, 11, 13

Digiacomo v. Expression Center for New Media Inc.
2008 U.S. Dist. Lexis 70099 (N.D. Cal. Sep. 15, 2008) ................................... 18

Doctor's Associates, Inc. v. Casarotto
517 U.S. 681 (1996) ..................................................................................... passim

Ferguson v. Countrywide Credit Industries, Inc.
298 F.3d 778(9th Cir. 2002)........................................................ 11, 13, 20, 23

Geoffroy v. Washington Mutual Bank
484 F.Supp.2d 1115 (S.D. Cal. 2007) ............................................................... 15

Horton v. Cal. Credit Corp. Ret. Plan
2009 U.S. Dist. Lexis 71176 (S.D. Cal. Aug. 13, 2009) ........................... 4, 8, 15

Ingle v. Circuit City Stores, Inc.
328 F.3d 1165 (9th Cir. 2003)................................................................ 11, 18, 23

Insight Management Group, LLC v. YTB Travel Network, Inc.
2009 U.S. Dist. Lexis 73643 (W.D.N.C. Aug. 19, 2009) .................................. 6

Irving v. Ebix, Inc.
2010 U.S. Dist. Lexis 80443 (S.D. Cal. Aug. 10, 2010) .................................... 3

Lacey v. EMC Mortgage Corp.
2011 U.S. Dist. Lexis 41400 (W.D.N.C. April 7, 2011) .................................... 6

1

2

McCollum v. Hamilton National Bank
303 U.S. 245 (1938) ............................................................................................ 6, 18

3

Nagrampa v. MailCoups, Inc.,
469 F.3d 1257 (9th Cir. 2006) ............................................................................... passim

4

Pokorny v. Quixtar, Inc.,
601 F.3d 987(9th Cir. Cal 2010) ............................................................................ 17

5

6

Rodriguez de Quijas v. Shearson/American Express, Inc.
490 U.S. 477 (1989) ............................................................................................... 4

7

Zamani v. Carnes
491 F.3d 990 (9th Cir. 2007) ................................................................................. 7

8

9

Zinser v. Accflix Research Institute, Inc.
253 F.d 1180 (9th Cir. 2001) ................................................................................. 7

10

11

**STATE CASES**

12

A&M Produce Co. v. FMC Corp.
135 Cal.App.3d 473 (1982) .................................................................................... 11

13

14

Abramson v. Juniper Networks, Inc.
115 Cal.App.4th 638 (2004) ................................................................................... 21, 24

15

Armendariz v. Foundation Health Psychcare Services, Inc.
24 Cal.4th 83, 103 (2000) ....................................................................................... passim

16

Bolter v. Superior Court
87 Cal.App.4th 900 (2001) ..................................................................................... 15, 16, 23

17

18

Brack v. Omni Loan Co.
164 Cal.App.4th 1312 (2008) ................................................................................. 6

19

Chin v. Advance Fresh Concepts Franchise Corp.
194 Cal.App.4th 704 (2011) ................................................................................... 13, 19

20

21

Discover Bank v. Superior Court
36 Cal.4th 148 (2005) ............................................................................................ 4

22

Fitz v. NCR Corp.
118 Cal.App.4th 702(2004) ................................................................................... 20, 24

23

24

Flores v. Transamerica HomeFirst, Inc.
93 Cal.App.4th 846 (2001) ..................................................................................... 7, 14, 21, 23

25

Gutierrez v. Autowest, Inc.
114 Cal.App.4th 77 (2003) ..................................................................................... 23

26

27

Lhotka v. Geographic Expeditions, Inc.
181 Cal.App.4th 816 (2010) ................................................................................... 12, 16

28

Little v. Auto Stielger, Inc.
29 Cal.4th 1064 (2003)........................................................................................ 20

Mencor Enters. v. Hets Equities Corp.
190 Cal. App. 3d 432 (1987).................................................................................. 5

Mercuro v. Superior Court
96 Cal.App.4th 167 (2002).................................................................................... 13

Nedlloyd Lines B.V. v. Superior Court
3 Cal.4th 459 (1992).............................................................................................. 5

O'Hare v. Municipal Resource Consultants,
107 Cal.App.4th 267 (2003) ...................................................................................13

Parada v. Superior Court
176 Cal.App.4th 1554 (2009)................................................................ 8, 9, 20, 23

Stirlen v. Supercuts, Inc.
51 Cal.App.4th 1519 (1997)............................................................................... 8, 13

Stock v. Meek
35 Cal.2d 809 (1950)......................................................................................... 5, 18

Wherry v. Award, Inc.
192 Cal.App.4th 1242 (2011)............................................................................... 17

**STATUTES**

9 U.S.C. § 1 .......................................................................................................... 3

9 U.S.C. § 2 .......................................................................................................... 3

Cal. Civil Code § 1670.5(a) ............................................................................ 2, 19

Cal. Civil Code § 1912 ......................................................................................... 2

Cal. Fin. Code § 22002.......................................................................................... 1

Cal. Uncodified Measures & Stats. 1919-1, § 3(a) ............................................. 18

**OTHER AUTHORITIES**

Cal. Const. Art. XV, Section 1(2) ......................................................................... 1

I.        INTRODUCTION

This is a class action brought on behalf of California individuals and businesses that obtained "merchant cash advances" from defendants Business Financial Services, Inc., Business Cash Advance, Inc., and Faton, Inc. (collectively "BFS").  Plaintiff Tamra Coviello is the sole proprietor of a small retail store (1,000 square feet) in Escondido, California known as "KC Dancegear."  KC Dancegear sells dance products like ballet shoes and leotards.  Declaration of Tamra Coviello, para. 2, filed herewith.  Plaintiffs Sevag ("Steve") M. Kalajian and Samuel Khatomatourian are the owners and sole employees of a company called Captain Bounce, Inc., located in San Fernando, California.  Captain Bounce sells inflatable jumpers and slides that are commonly used at children's parties.  Declaration of Sevag M. Kalajian, para. 2, filed herewith.

Plaintiffs allege that BFS is engaging in a scheme to evade California's usury laws. Article XV, Section 1(2) of the California Constitution caps the interest rate that a lender may charge to commercial borrowers.  Currently, that interest rate is 10% per year.[1]  Although lenders that are licensed under the California Finance Lenders Law are exempt from the usury laws (Cal. Fin. Code § 22002), plaintiffs allege that BFS is not licensed or otherwise authorized to make loans in California.  Complaint, para. 6.  Plaintiffs allege that BFS is cheating California borrowers by charging illegal rates of interest on its merchant cash advances.  A merchant cash advance is really a form of loan, in which the lender advances money to the borrower and takes a security interest in the borrower's assets, and in exchange, the borrower agrees to repay the money plus an additional amount (interest) out of the borrower's future credit card receipts.  Complaint, para. 9.  On their loans with BFS, plaintiffs paid interest rates that ranged from 70-90% on an annualized basis.  Complaint, paras. 7-8.  In an attempt to evade the usury laws, BFS tries to

---

[1]        Section 1(2) caps the maximum interest rate on commercial loans at the higher of (a) 10% per year, or (b) 5% above the rate set by the Federal Reserve Bank of San Francisco for loans to member banks.  Cal. Const. Art. XV, Section 1(2).  Id.  Currently, the Federal Reserve Bank of San Francisco's rate for loans to member banks is 0.75%, so the interest rate cap on commercial loans is 10%.  See Federal Reserve Bank of San Francisco "Discount Rate" on Advances to Member Banks, available at "www.frbsf.org/banking/data/discount/index.html" (accessed on May 18, 2011).

characterize the transactions as "purchases" of "future credit card receivables" rather than loans, but this characterization flies in the face of California Civil Code § 1912, which defines a "loan of money" as "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time equivalent to that which he borrowed." Id. BFS's transactions with California borrowers are plainly usurious.

BFS is now trying to deprive plaintiffs of their day in court and instead force them to arbitrate their claims on an individual basis in North Carolina. However, as explained below, the arbitration clause in BFS's "Accounts Receivable Purchase Agreement" ("Contract") is unenforceable because it is both procedurally and substantively unconscionable under California law. The arbitration clause is procedurally unconscionable because it was presented to plaintiffs on "take-it-or-leave-it" basis without any opportunity for negotiation, and BFS had superior bargaining power. The arbitration clause is substantively unconscionable in at least five different respects: (1) it lacks mutuality, in that plaintiffs are relegated to arbitration while BFS retains its right to sue in court; (2) it permits BFS to foreclose on plaintiffs' property and exercise other self-help remedies outside of arbitration; (3) it forces plaintiffs to travel to North Carolina to arbitrate their claims; (4) it imposes the cost of the arbitration on the losing party; and (5) it prevents the arbitrator from awarding punitive damages, which are otherwise permitted under California's usury laws. See Sections IV(A) and (B) below.

Upon finding that the Contract is unconscionable, the Court has the discretion under California Civil Code § 1670.5(a) either to refuse to enforce the arbitration clause, or sever or restrict the unconscionable terms; however, the Court cannot rewrite the Contract. In Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th Cir. 2006), an en banc panel of the Ninth Circuit held that an arbitration clause containing just two unconscionable provisions was "so permeated by substantive unconscionability" that it could not be cured by severing or restricting the unconscionable terms. Furthermore, because the court had no power to rewrite the contract under Section 1670.5 or the Federal Arbitration Act, the proper remedy was to refuse to enforce the arbitration clause. Id. at 1293. In this case, as in Nagrampa, it would be impossible to cure the multiple defects in the arbitration clause through severance or restriction. Instead, the Court would be forced to rewrite

the Contract.  The correct option is to refuse to enforce the arbitration clause.  <u>See</u> Section V

below.  BFS's motion to stay this action and compel arbitration should be denied.

II.    THE COURT IS AUTHORIZED TO DENY ARBITRATION IF THE COURT FINDS
        THE ARBITRATION CLAUSE IS UNCONSCIONABLE UNDER STATE LAW

As a threshold matter, plaintiffs agree with BFS that the Federal Arbitration Act ("FAA")

applies because the Contract involves interstate commerce.  9 U.S.C. § 1; <u>Irving v. Ebix, Inc.</u>,

2010 U.S. Dist. Lexis 80443, at *2 (S.D. Cal. Aug. 10, 2010) (Sammartino, J.).  Furthermore,

plaintiffs agree that their claims fall within the scope of the Contract's arbitration clause.  <u>Cox v.</u>

<u>Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1119 (9th Cir. 2008) (in ruling on a motion to compel

arbitration, court must determine whether the arbitration agreement encompasses the dispute at

issue); <u>Irving</u>, at *3 (same).  Finally, plaintiffs do not dispute that they signed the Contracts

attached as Exhibits A and B to BFS's moving papers (Docket Nos. 5-2 and 5-3).

Nevertheless, plaintiffs contend that the arbitration clause is unenforceable because it is

unconscionable.[2]  Section 2 of the Federal Arbitration Act states that written arbitration

agreements are valid, irrevocable, and enforceable "save upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.  The U.S. Supreme Court has consistently

held that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may

be applied to invalidate arbitration agreements without contravening § 2."  <u>Doctor's Associates,</u>

<u>Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996); <u>Allied-Bruce Terminix Companies, Inc. v. Dobson</u>,

513 U.S. 265, 281 (1995) (noting that states may regulate contracts, including arbitration clauses,

under general contract law principles and may invalidate an arbitration clause upon grounds

applicable to any contract).  Thus, under the "savings clause" of Section 2, this Court has the

authority to refuse to enforce the Contract's arbitration provision if it finds that the clause is

unconscionable under general contract law principles. <u>Doctor's Associates</u>, 517 U.S. at 687;

_____

[2]     Questions about the validity and enforceability of an arbitration clause are decided by the
courts, not by an arbitrator.  <u>Nagrampa</u>, 469 F.3d at 1264, 1268-70 (holding that the district court
properly considered the plaintiff's claim that the arbitration clause was unconscionable).

1  Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (refusing to order arbitration

2  because the arbitration clause was unconscionable under California law); Horton v. Cal. Credit

3  Corp. Ret. Plan, 2009 U.S. Dist. Lexis 71176, at *5-22 (S.D. Cal. Aug. 13, 2009) (same).

4       BFS does not contend – nor could it – that the U.S. Supreme Court's recent decision in

5  AT&T Mobility LLC v. Concepcion, 563 U.S. ___, 2011 U.S. Lexis 3367 (April 27, 2011),

6  overruled the holding of Doctor's Associates.  In AT&T, a sharply-divided court held that

7  California's rule prohibiting the enforcement of class action waivers in arbitration agreements

8  (which the court referred to as the "Discover Bank rule" after the California Supreme Court's

9  decision in Discover Bank v. Superior Court, 36 Cal.4th 148 (2005)) was preempted by the FAA.

10  AT&T, 2011 U.S. Lexis 3367, at **18.  The five-justice majority found that classwide arbitration

11  was fundamentally inconsistent with the informal, bilateral process contemplated by the FAA.  Id.

12  at **25-27.  Thus, the Court held that the Discover Bank rule, which effectively authorized

13  classwide arbitrations in all consumer disputes, stood as an obstacle to the "full purposes and

14  objectives of Congress" in enacting the FAA, and therefore was preempted.  Id. at **33 (internal

15  quotes and cite omitted).  However, there is no indication that the AT&T Court intended to

16  overrule Doctor's Associates or alter the general principle that a court may refuse to enforce

17  arbitration agreements that are unconscionable.  To the contrary, the majority opinion cited

18  Doctor's Associates with approval.  AT&T, 2011 U.S. Lexis 3367, at **11.  Furthermore, even if

19  the majority opinion raised questions about the continuing validity of Doctor's Associates (which

20  it does not), lower courts must continue to follow the controlling precedents of the Supreme Court

21  (i.e., Doctor's Associates) and leave to the Supreme Court "the prerogative of overruling its own

22  decisions." Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989).

23  Accordingly, the holding of Doctor's Associates survives AT&T.[3]

24  /////

25  _____

26  [3]     Significantly, Justice Thomas, who voted with the 5-4 majority, filed a concurring opinion

27  in which he expressly agreed that fraud, duress, and unconscionability are valid defenses to the
   making of an arbitration agreement.  AT&T, 2011 U.S. Lexis 3367, at **39 fn. * (Thomas, J.,

28  concurring).

III.    THE COURT SHOULD APPLY CALIFORNIA LAW IN DECIDING WHETHER THE CONTRACT IS UNCONSCIONABLE

Although the Contract contains a North Carolina choice of law clause (Contract, para. 21), BFS's motion analyzes whether the Contract is unconscionable under California law.  See Moving Papers, pages 8-14, Docket No. 5-1.  Plaintiffs agree with BFS that the Court should apply California law in determining whether the arbitration clause is unconscionable.

A federal court exercising diversity jurisdiction follows the forum state's choice of law rules.  Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010).  Under the California rule, which is based on Section 187(2) of the Restatement (Second) of Conflicts of Laws, the court must first determine "whether the chosen state has a substantial relationship to the parties or their transaction … or whether there is any other reasonable basis for the parties' choice of law."  Id., quoting Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 466 (1992).  If either test is met, then the court must decide whether the chosen state's law conflicts with a fundamental policy of California.  Bridge Fund, 622 F.3d at 1002.  If the court finds such a conflict, it "must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue."  Id. (internal quotes omitted).  If California has the materially greater interest, the court applies California law regardless of the choice of law clause.  Id. at 1003.

In this case, even assuming that North Carolina has a substantial relationship to the parties (because Business Financial Services, Inc. is incorporated in North Carolina), the application of North Carolina law would violate California's fundamental public policy.  California has a strong public policy against usury and permits the award of treble damages and punitive damages to deter usurious transactions.  Mencor Enters. v. Hets Equities Corp., 190 Cal. App. 3d 432, 440 (1987) (strong public policy against usury); Stock v. Meek, 35 Cal.2d 809, 816 (1950) (usury law imposes treble damages as a penalty against lenders that commit usury); Cal. Civ. Code § 3294(a)

/////

/////

/////

1   (punitive damages available for the breach of obligations not arising from contract).[4] Furthermore,

2   California has a strong public policy against enforcing arbitration agreements that prevent the

3   arbitrator from awarding all types of relief permitted by law, including punitive damages.  Bridge

4   Fund, 622 F.3d at 1003; Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83,

5   103 (2000) (arbitration clause that denied recovery of punitive damages and attorneys' fees that

6   were otherwise permitted by statute was contrary to California public policy).  In this case,

7   Paragraph 21(a) of the Contract prevents the arbitrator from awarding punitive damages to either

8   party.  Under North Carolina law, this limit on the arbitrator's authority to award damages would

9   be enforceable.  Lacey v. EMC Mortgage Corp., 2011 U.S. Dist. Lexis 41400, at *15-16

10   (W.D.N.C. April 7, 2011) (arbitration clause that prohibited award of punitive damages was not

11   unconscionable); Insight Management Group, LLC v. YTB Travel Network, Inc., 2009 U.S. Dist.

12   Lexis 73643, at *13 (W.D.N.C. Aug. 19, 2009) (arbitration clause that prevented either side from

13   recovering compensatory or punitive damages unless they proved knowing or willful conduct was

14   not unconscionable).

15        Because application of North Carolina law would conflict with California's fundamental

16   public policy, the Court must then decide whether California has a materially greater interest than

17   North Carolina in having its law applied.  "In assessing which state has a materially greater

18   interest, California courts 'consider which state, in the circumstances presented, will suffer greater

19   impairment of its policies if the other state's law is applied.'"  Bridge Fund, 622 F.3d at 1004,

20   quoting Brack v. Omni Loan Co., 164 Cal.App.4th 1312, 1329 (2008).  In Brack, a Nevada

21   corporation made over 12,000 loans to California borrowers.  The loan agreements contained a

22   Nevada choice of law clause.  Nevertheless, the court applied California law, holding that

23   California's interest in protecting thousands of California borrowers outweighed Nevada's interest

24   in protecting the out-of-state activities of a single corporation.  Id. at 1328.  Similarly, in this case,

25   California's interest in protecting hundreds of individuals and businesses that allegedly received

---

27   [4]   Usury is a tort claim, not a contract claim.  McCollum v. Hamilton National Bank, 303 U.S. 245, 247 (1938).  Therefore, punitive damages are recoverable under Section 3294(a).

usurious loans outweighs North Carolina's interest in protecting the out-of-state activities of one North Carolina corporation, Business Financial Services, Inc.  Accordingly, plaintiffs agree with BFS that the Court should apply California law in deciding whether the arbitration clause in the Contract is unconscionable.[5]

IV.     THE ARBITRATION CLAUSE IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE UNDER CALIFORNIA LAW

The doctrine of unconscionability has both a procedural and a substantive element.  Armendariz, 24 Cal.4th at 114.  The procedural element focuses on oppression or surprise due to unequal bargaining power, and the substantive element focuses on overly harsh or one-sided results.  Id.; Nagrampa, 469 F.3d at 1280.  Procedural and substantive unconscionability need not be present in the same degree.  Armendariz, 24 Cal.4th at 114; Nagrampa, 469 F.3d at 1280.  Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  Armendariz, 24 Cal.4th at 114; Nagrampa, 469 F.3d at 1280.

A.     The Arbitration Clause Is Procedurally Unconscionable.

The threshold inquiry in determining procedural unconscionability is whether the arbitration agreement is adhesive.  Armendariz, 24 Cal.4th at 113; Nagrampa, 469 F.3d at 1281.  An adhesion contract is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate its terms."  Nagrampa, 469 F.3d at 1281 quoting Flores v. Transamerica HomeFirst, Inc., 93 Cal.App.4th 846, 853 (2001).  In Circuit City Stores, the Ninth Circuit held that an adhesion contract is, by definition, procedurally unconscionable.  Circuit City Stores, 279

---

[5]     Plaintiffs have no reason to believe that BFS would attempt to argue for application of North Carolina law in its reply brief.  However, to the extent that BFS does so, BFS has waived that argument.  See Nagrampa, 469 F.3d at 1267 (although contract contained a Massachusetts choice of law clause, the parties argued to the court that California law applied; accordingly, the court found that the choice of law clause had been waived); see also Zinser v. Accflix Research Institute, Inc., 253 F.d 1180, 1187 (9th Cir. 2001) (the party seeking to invoke the law of a jurisdiction other than California bears the burden of proof; BFS has failed to meet its burden in this case).  Furthermore, a district court need not consider arguments raised for the first time in a reply brief.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

F.3d at 893 <u>citing</u> <u>Stirlen</u>, 51 Cal.App.4th at 1532-33.  In <u>Nagrampa</u>, the court held that procedural unconscionability exists when: (1) the agreement containing the arbitration provision is presented on a "take-it-or-leave-it" basis, and (2) the party drafting the contract had superior bargaining power.  <u>Nagrampa</u>, 469 F.3d at 1284; <u>accord</u> <u>Horton v. Cal. Credit Corp. Ret. Plan</u>, 2009 U.S. Dist. Lexis 71176, at *11 (S.D. Cal. Aug. 13, 2009). (Gonzalez, J.)

> 1.    <u>The Contract Was Presented on a Take-It-Or-Leave-It Basis.</u>

It is beyond dispute that the Contract and the arbitration clause were presented to plaintiffs on a take-it-or-leave-it basis.  When BFS emailed the Contract to plaintiffs, BFS attached a cover email that warned: "**Do NOT modify your contracts in any way.  <u>Doing so will make your agreements null/void.</u>**"  (Emphasis in original.)  Kalajian Dec., para. 5 and Exhibit 1; Coviello Dec., para. 5 and Exhibit 1.  Ms. Coviello also recalls that, right after she received the Contract, BFS called her and told her that she needed to sign the Contract right away or else the deal was "off the table."  Coviello Dec., para. 5.  Contrary to BFS's motion, plaintiffs did not have the opportunity to negotiate any of the terms of the Contracts.  Kalajian Dec., para. 5; Coviello Dec., para. 5.[6]  Because plaintiffs desperately needed the money, they signed the Contracts and returned them quickly, without reading them carefully.  Kalajian Dec., para. 5; Coviello Dec., para. 5.  BFS never explained to plaintiffs any of the terms that plaintiffs contend are unconscionable, including the arbitration clause, the North Carolina venue clause, the limit on punitive damages, the fact that the loser pays the costs of arbitration, the fact that plaintiffs could be liable for BFS's attorneys' fees, the fact that BFS retains the right to sue plaintiffs in court, or the fact that BFS has the right to exercise self-help remedies such as foreclose and set-off outside of arbitration.  Contract, paras. 21 and 22; Kalajian Dec., para. 6; Coviello Dec., para. 7.

This case is very similar to <u>Parada v. Superior Court</u>, 176 Cal.App.4th 1554 (2009).  In that case, the petitioners opposed an arbitration clause in an account agreement.  The account

---

[6]    Notably, BFS's assertion that "Plaintiffs were able to negotiate the terms of their agreements …" (Moving Papers, page 10, line 4) is not supported by any <u>evidence</u>.  Nothing in the Glazer declaration or in the other materials filed by BFS supports its claim that plaintiffs had the opportunity to negotiate the terms of the Contracts.

1    agreement contained a proviso stating: "Any deletions from, additions to or cutting or mutilation

2    of any portion of this Agreement will render the Agreement unacceptable."   Id. at 1570.

3    According to the Parada court, the proviso established procedural unconscionability because it

4    showed that the petitioners were not given "reasonable notice of [the] opportunity to negotiate or

5    reject the terms of the contract" and "an actual, meaningful, and reasonable choice to exercise that

6    discretion."   Id. at 1570-71 quoting Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1106 (9th

7    Cir. 2003).   Similarly, in this case, BFS's written warning that any modifications of the Contract

8    would render it null and void and its oral statements to Ms. Coviello that she needed to return the

9    Contract as soon as possible or else the deal was "off the table" clearly conveyed that the terms of

10   the Contract were non-negotiable.

11       Finally, BFS's claim that the arbitration clause is not "hidden" or "difficult to read" is

12   irrelevant.   In Davis v. O'Melveny & Myers, 485 F.3d 1066, 1073 (9th Cir. 2007), the court

13   expressly found that the arbitration clause was not "hidden" or "concealed"; to the contrary, the

14   clause was in bold and uppercase text.   Nevertheless, the court ruled that the arbitration clause was

15   procedurally unconscionable because it was presented on a take-it-or-leave-it basis.   Id. at 1074.

16           2.       BFS Had Superior Bargaining Power.

17       As compared to plaintiffs, BFS had vastly superior bargaining power.   At the time

18   plaintiffs applied for their loans, they were financially desperate.   Kalajian Dec., para. 3; Coviello

19   Dec., para. 3.   Captain Bounce owed its vendors money, its telephone and utilities were in the

20   process of being shut off, and it was late in its store lease payments.   Kalajian Dec., para. 3.   KC

21   Dancegear was also losing money, and Ms. Coviello was behind in payments to her vendors.

22   Coviello Dec., para. 3.   In fact, in 2010, the year that Ms. Coviello obtained the advance, KC

23   Dancegear ended up losing $7,100.   Id.   Plaintiffs had nowhere to turn to borrow money.   Kalajian

24   Dec., para. 3; Coviello Dec., para. 3.   Their only option was a merchant cash advance.   Id.   None

25   of the plaintiffs could afford an attorney to review the Contract or represent them in their dealings

26   with BFS.   Kalajian Dec., para. 5; Coviello Dec., para. 6.

27       In contrast to plaintiffs, BFS is highly sophisticated.   According to its website, BFS has

28   been "a leader in the merchant cash advance industry since 2002" providing "working capital to

9

1   business owners in all 50 states and Puerto Rico."  Declaration of James F. Clapp, filed herewith,

2   Exhibit 1.  BFS has offices in Florida, New York, and North Carolina.  Id.  BFS has institutional

3   partners and bank financing that "allows BFS to fund all qualified merchants."  Id.  BFS's Notice

4   of Removal states that the total value of BFS's California accounts during the four-year class

5   period exceeds $5,000,000.  Docket No. 1, page 2, lines 23-24.  BFS and its CEO, Marc Glazer,

6   are actively involved in the industry trade group known as the North American Merchant Advance

7   Association.  Glazer declaration, para. 3, Docket No. 5-1.  Mr. Glazer has been involved in the

8   merchant cash advance business for more than 10 years.  Id.

9       BFS attempts to argue that plaintiffs are sophisticated because their websites contain

10   arbitration clauses.   However, Ms. Coviello explains that the arbitration clause on the KC

11   Dancegear website was included in a template she used to set up the site.  Before this lawsuit was

12   filed, she had no idea the arbitration clause was in the template, and she has never participated in

13   an arbitration with any of her customers.  Coviello Dec., para. 10.  Similarly, the arbitration clause

14   in the Captain Bounce website was inserted by its website designer, which had previously

15   designed a website for another company that sold inflatable jumpers and adapted the clause for

16   Captain Bounce's website.  Kalajian Dec., para. 9.  Captain Bounce has never participated in an

17   arbitration with any of its customers either.  Id.[7]

18       Next, BFS contends that plaintiffs had equal bargaining power because merchant cash

19   advance industry is "extremely competitive" and "merchants seeking financing occupy a strong

20   negotiating position."  Moving Papers, page 10, lines 20-21, Docket No. 5-1.  These statements

21   are not supported by admissible evidence.[8]   In any event, the Ninth Circuit has repeatedly held

22   _____

23   [7]     Although the enforceability of those arbitration clauses is irrelevant to this motion,
    plaintiffs note that neither clause permits one party to file a lawsuit in court while the other party is
24   relegated to arbitration, allows one party to exercise self-help outside of arbitration, or imposes the
    costs of arbitration on the losing party, unlike the arbitration clause in Paragraph 21 of the
25   Contract.

26   [8]     The statements about the merchant cash advance industry from the "Merchant Processing
    Resource" and "Vendor Seek" websites, attached as Exhibit 4 and 5 to Defendants' Request for
27   Judicial Notice, Docket No. 5-4, are hearsay and lacking in foundation.  See Plaintiffs' Opposition
28   (footnote continued)

1   that the availability of other options in the marketplace does not bear upon whether the contract is

2   procedurally unconscionable.  Davis, 485 F.3d at 1074; Ingle v. Circuit City Stores, Inc., 328

3   F.3d 1165, 1172 (9th Cir. 2003); Nagrampa, 469 F.3d at 1283; Ferguson v. Countrywide Credit

4   Industries, Inc., 298 F.3d 778, 784 (9th Cir. 2002) ("[W]ether the plaintiff had an opportunity to

5   decline the defendant's contract and instead enter into a contract with another party that does not

6   include the offending terms is not the relevant test for procedural unconscionability.")

7        Finally, BFS argues that the unconscionability rules should not apply because the

8   arbitration clause is contained in a commercial contract.  Moving Papers, page 9, lines 21-22,

9   Docket No. 5-1.  However, the very case on which BFS relies, A&M Produce Co. v. FMC Corp.,

10   135 Cal.App.3d 473 (1982), refutes this argument.  The A&M court observed: "With increasing

11   frequency, courts have begun to recognize that experienced but legally unsophisticated

12   businessmen may be unfairly surprised by unconscionable contract terms [citations], and that even

13   large business entities may have relatively little bargaining power, depending on the identity of the

14   other contracting party and the commercial circumstances surrounding the agreement."  Id. at 489-

15   90.  The A&M court held that, even without a showing of unfair surprise, the commercial contract

16   in that case was procedurally unconscionable because the parties had unequal bargaining power

17   and there was no real negotiation over the terms of the contract.  Id. at 491; see also Nagrampa,

18   469 F.3d at 1283-84 (finding procedural unconscionability even though arbitration clause was

19   contained in a commercial franchise agreement).  The same is true here.

20        B.    The Arbitration Clause Is Substantively Unconscionable.

21        The arbitration clause is substantively unconscionable in at least five different respects:

22   (1) the arbitration clause lacks mutuality because BFS retains the right to sue plaintiffs in court;

23   (2) BFS has the unilateral right to exercise self-help remedies (foreclosure or set-off) outside of

24   _____

25   to Defendants' Request for Judicial Notice, filed herewith.  The statement in paragraph 4 of the
    Glazer declaration that the "statistics presented on the web pages … regarding the identity of BFS
26   competitors are accurate" also lacks foundation.  There is no admissible evidence before the Court
    that the merchant advance industry is "extremely competitive" or that customers "occupy a strong
27   negotiating position."

28

arbitration; (3) the arbitration clause requires that the arbitration take place in Charlotte, North Carolina; (4) the arbitration clause requires that the loser pay the fees and costs of arbitration; and (5) the arbitration clause limits the award of punitive damages.[9]

### 1.   The Lack of Mutuality is Unconscionable.

Paragraph 21(b) of the Contract states:

"(b) Reservation of Rights.  Nothing in this arbitration provision shall be deemed to … (iii) limit the right of the Purchaser hereto … (c) obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver…. The Purchaser may … obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document."

Furthermore, Paragraph 6(d) states:

"(d) Merchant agrees that all information about Purchaser disclosed to it at any time in connection with this Agreement, including this Agreement, shall be kept confidential…. In the event of a breach of threatened breach by Merchant of the provisions of this section, Purchaser shall be entitled to an injunction restraining Merchant from such breach or threatened breach…. In the event that such equitable relief is granted, such remedy or remedies for breach or threatened breach shall not be deemed to be the exclusive remedy or remedies available at law or equity to Purchaser."[10]

---

[9]   In their Complaint, plaintiffs have sought declaratory relief that the provisions allowing BFS to seek injunctive relief in court, imposing arbitration fees on the losing party, and limiting punitive damages are unconscionable.  Complaint, para. 32.  The fact that plaintiffs have not sought declaratory relief with respect to the provisions allowing BFS to exercise self-help outside of arbitration and requiring any arbitration to place in Charlotte, North Carolina does not prevent plaintiffs from raising those provisions in opposition to a motion to compel arbitration.  See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 2008 U.S. Dist. Lexis 83724, at *15-16 n.5 (Aug. 20, 2008) aff'd Bridge Fund, supra, 622 F.3d 996 ("[G]iven the notice pleading structure of the Federal System, and the content of the filing by both parties, this Court finds that the Defendants were properly notified that Plaintiffs are seeking a judgment declaring the arbitration provisions unenforceable as unconscionable. Thus, Plaintiff's lack of specific challenge to the arbitration provision in the Complaint is immaterial.")

[10]   Although Paragraph 6(d) is not contained in the paragraph entitled "Arbitration" (Paragraph 21), it affects the scope of the arbitration clause and therefore should be considered as part of the Contract's arbitration provision.  See Lhotka v. Geographic Expeditions, Inc., 181 Cal.App.4th 816, 825 n.4 (court properly considered the effect of a separate indemnification clause because it was "substantively relevant to whether or not the proposed arbitration system would provide an unacceptably one-sided forum for dispute resolution").  The same is true for the other paragraphs of the Contract discussed below.

---

The fact that plaintiffs are relegated to arbitration while BFS retains the right to sue in court is unconscionable. "Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability." Nagrampa, 469 F.3d at 1286. In Nagrampa, the Ninth Circuit held that an arbitration clause was substantively unconscionable because it gave the franchisor access to a judicial forum to obtain provisional remedies to protect its intellectual property, whereas the franchisee was limited to arbitration. Id. at 1285-87. Similarly, in Bridge Fund, the Ninth Circuit held that an arbitration clause that allowed a franchisor to obtain injunctive relief in court was substantively unconscionable. Bridge Fund, 622 F.3d at 1005. The court rejected the franchisor's argument that it needed access to the court system in order to obtain provisional remedies against the franchisee, holding that this purported business justification was "insufficient under California law to justify non-mutuality." Id. Likewise, in Davis, the Ninth Circuit held that an exception to an arbitration clause that allowed the employer to seek an injunction to protect confidential information was unconscionably one-sided and not justified by the employer's business needs. Davis, 485 F.3d at 1080-81; see also Armendariz, 24 Cal.4th at 119 (substantive unconscionability exists where the agreement requires arbitration "only for the claims of the weaker party but a choice of forums for the claims of the stronger party"); Mercuro v. Superior Court, 96 Cal.App.4th 167, 175-76 (2002) (arbitration agreement that permitted stronger party to litigate claims for injunctive and/or equitable relief was substantively unconscionable and not justified by business necessity); Ferguson, 298 F.3d at 784-75 (same); O'Hare v. Municipal Resource Consultants, 107 Cal.App.4th 267, 277 (2003) (same); Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1537 (1997) (noting that a "unilateral right to litigate rather than arbitrate claims … cannot be justified by the need for provisional remedies").

The only case cited by BFS in defense of its non-mutual arbitration clause is Chin v. Advance Fresh Concepts Franchise Corp., 194 Cal.App.4th 704 (2011). Chin is plainly distinguishable. In that case, the court found that an exception in the arbitration agreement that allowed "a party" to seek injunctive relief in court was not unconscionable because it applied

1   equally to both sides; it did not provide "a choice of forums [solely] for the claims of the stronger

2   party."  Id. at 712 (internal quotes omitted).  By contrast, in this case, Paragraphs 21 of the

3   Contract expressly relegates plaintiffs to arbitration while giving BFS the choice to seek injunctive

4   relief in court.  Unlike the situation in Chin, the right to seek injunctive relief in court does not

5   apply equally to both sides.

6              2.      BFS's Unilateral Right to Exercise Self-Help Is Unconscionable.

7      Paragraph 21(b) of the Contract provides:

8      "Nothing in this arbitration provision shall be deemed to … (iii) limit the right of
       Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b)
9      to foreclose against any real or personal property or collateral…. The Purchaser may
       exercise such self help rights … before, during or after the pendency of any arbitration
10     proceeding brought pursuant to this instrument, agreement or document."

11     BFS's self-help rights are extensive and extremely one-sided.  Paragraph 9 of the Contract

12  gives BFS a security interest in plaintiffs' "Collateral."  Paragraph 1 defines "Collateral" as "all

13  the personal property of the Merchant wherever located, and now owned and hereafter acquired

14  including, without limitation: (a) accounts, including, without limitation, debit or credit card

15  receivables, whether now existing or created in the future; (b) chattel paper; (c) inventory; (d)

16  equipment; (e) instruments, including, without limitation, promissory notes; (f) investment

17  property; (g) documents; (h) deposit accounts; (i) letter of credit rights; (j) general intangibles; (k)

18  supporting obligations; (l) proceeds and products of the foregoing; and (m) commercial tort

19  claims."  Paragraph 9(c) permits BFS, in the event of plaintiffs' default, to foreclose on plaintiffs'

20  Collateral and force a public sale.  Paragraph 9(d) permits BFS to collect money and sue in

21  plaintiffs' name.  Paragraphs 8(b) and 25 authorize BFS to set-off plaintiffs' indebtedness against

22  plaintiffs' bank accounts or other property, without notice to plaintiffs.  Under Paragraph 21(b) of

23  the Contract, these self-help rights do not fall within the scope of the arbitration clause.

24     BFS's unilateral right to exercise self-help outside of arbitration is unconscionable.  In

25  Flores, supra, the arbitration clause permitted the lender to foreclose on the borrower's property

26  while the borrower was limited to arbitration.  Flores, 93 Cal.App.4th at 854.  The court held that

27  this clause was substantively unconscionable.  Id. at 855.  The court also rejected the lender's

28  argument that its foreclosure remedy was a "legitimate commercial means or ensuring its

1   security." Id.  Instead, the court found that, by retaining its self-help rights, the lender had

2   "attempted to maximize its advantage by avoiding arbitration of its own claims." Id.  Similarly, in

3   Geoffroy v. Washington Mutual Bank, 484 F.Supp.2d 1115, 1123 (S.D. Cal. 2007), Judge Benitez

4   held that an arbitration clause between a bank and its customer was unconscionable because the

5   bank retained the right either to offset its own claims against the customer's accounts, or to

6   exercise a security interest in the customer's property, without resorting to arbitration.  Finally, in

7   Horton, supra, Judge Gonzalez held that an arbitration clause that permitted the lender to foreclose

8   on the borrower's property while the borrower was limited to arbitration was substantively

9   unconscionable.  Horton, 2009 U.S. Dist. Lexis 71176, at *18.

10          3.      The Venue Selection Clause Is Unconscionable.

11          Paragraph 21(a) of the Contract states that any arbitration must be conducted in the City of

12   Charlotte, North Carolina.  "Place and manner" restrictions in arbitration clauses are

13   unconscionable if: (1) they are unduly oppressive, or (2) have the effect of shielding the stronger

14   party from liability.  Nagrampa, 469 F.3d at 1287.  In assessing the reasonableness of a place and

15   manner restriction, the court must take into account the "respective circumstances of the parties."

16   Id. at 1288 quoting Bolter v. Superior Court, 87 Cal.App.4th 900, 909 (2001).  In Nagrampa, the

17   Ninth Circuit held that a place and manner restriction that required arbitration to take place in

18   Boston, Massachusetts, a few miles away from the franchisor's headquarters but three thousand

19   miles away from the franchisee's California home, was substantively unconscionable.  The court

20   found that forcing the franchisee to fly across the country to pursue her claim would impose an

21   unreasonable financial hardship on her.  Id. at 1289-90.  Similarly, in Bolter, the court held that a

22   provision requiring California franchisees to arbitrate their claims in Salt Lake City, Utah was

23   substantively unconscionable.  Bolter, 87 Cal.App.4th at 909-10.  Like the Nagrampa court, the

24   Bolter court weighed the respective circumstances of the parties.  The court found that, because

25   the franchisees were small businesses, it was "not a reasonable or affordable option for franchisees

26   to abandon their offices for any length of time to litigate a dispute several thousand miles away."

27   Id. at 909; see also Bridge Fund, supra, 622 F.3d at 1005 (noting that the selection of Texas as the

28   forum for arbitration, along with the Texas choice of law, had the effect of shielding the stronger

15

1  party from liability, which made the arbitration clause "likely unconscionable"); Lhotka, 181

2  Cal.App.4th at 825 (arbitration clause that required Colorado residents to mediate and arbitrate

3  their claims in San Francisco was unconscionable); Comb v. Paypal, Inc., 218 F.Supp.2d 1165,

4  1176-77 (N.D. Cal. 2002) (arbitration clause that required Paypal's customers throughout the

5  United States to arbitrate their claims in Santa Clara County, California – "Paypal's backyard" –

6  was substantively unconscionable).

7       In this case, as in Nagrampa and Bolter, it would present a severe financial hardship to

8  require plaintiffs to fly to Charlotte, North Carolina to arbitrate their claims.  Kalajian Dec., para.

9  7; Coviello Dec., para. 8.  Plaintiffs estimate that an arbitration involving Captain Bounce's and

10  KC Dancegear's claims would take a total of three days (Clapp Dec., para. 3), so with travel,

11  plaintiffs would lose at least five days of revenue, or $5,000 for Captain Bounce and $2,500 for

12  Ms. Coviello.  Kalajian Dec., para. 7; Coviello Dec., para. 8.  Round-trip flights from San Diego

13  to Charlotte currently cost a minimum of $368 (Delta Airlines, one-stop, priced through

14  Expedia.com on May 15, 2011).  Hotels in downtown Charlotte are priced from $126 per night

15  (Blake Hotel) to $183 per night (Hilton Hotel) (priced through Expedia.com on May 15, 2011).

16  Clapp Dec., para. 4.  Even without meals and miscellaneous expenses, an arbitration in Charlotte

17  would cost Captain Bounce at least $6,114 (two $368 flights, plus 3 nights at $126 per night, plus

18  $5,000 in lost revenue) and Ms. Coviello at least $3,246 (one $368 flight plus 3 nights at $126 per

19  night, plus $2,500 in lost revenue).  Kalajian Dec., para. 8; Coviello Dec., para. 9.  Plaintiffs do

20  not have the money to pay these amounts, and if they were forced to do so, they would likely need

21  to abandon their claims.  Id.  As in Nagrampa and Bolter, the venue selection provision is

22  unconscionable because it would be unreasonable to require plaintiffs to abandon their businesses

23  and travel across the country to arbitrate their claims.[11]

24  _____

25  [11]    Again, it is irrelevant that the arbitration clause on the KC Dancegear website, which
   Ms. Coviello did not draft, was not aware of, and which has never been used, provides for
26  arbitration in Escondido, California.  This case involves BFS's venue selection clause, not KC
   Dancegear's.  Furthermore, there is no evidence before the Court that arbitration in Escondido,
27  California would be unreasonable for any of Ms. Coviello's customers.

28

4.       The "Loser Pays" Provision Is Unconscionable.

Paragraph 21(a) of the Contract states that "the costs and fees of such arbitration shall be borne by the losing party." This provision is substantively unconscionable. In <u>Pokorny</u>, the Ninth Circuit invalidated a similar "loser pays" provision that required an unsuccessful plaintiff to pay the full cost of arbitration. <u>Pokorny v. Quixtar, Inc.</u>, 601 F.3d 987, 1004 (9th Cir. Cal. 2010). The court held that the provision was substantively unconscionable because it put plaintiffs in arbitration "at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court." <u>Id.</u> at 1004. The court rejected the defendant's argument that plaintiff was required to show "actual financial hardship" rather than the "risk of such hardship." <u>Id.</u> The fact that the arbitration agreement included a cost-shifting provision was sufficient to support a finding of unconscionability even without proof of actual financial hardship. <u>Id.</u> at 1004-05. Similarly, in <u>Wherry v. Award, Inc.</u>, 192 Cal.App.4th 1242, 1248-49 (2011), the court held that an arbitration clause that permitted the arbitrator to impose arbitration costs against an unsuccessful plaintiff was substantively unconscionable. <u>Id.</u>

Although plaintiffs are not required to prove actual financial hardship, they would, in fact, suffer severe financial hardship if they were held liable for the full cost of the arbitration. Paragraph 21(a) of the Contract states that any arbitration must be conducted under the American Arbitration Association's Commercial Arbitration Rules. Rule R-50 of the Commercial Arbitration Rules states that the expenses of the arbitration, including the expenses of the arbitrator, "shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." <u>See</u> Clapp Dec., Exhibit 2. Here, the Contract provides that the loser pays. Contract, para. 21(a). Rule R-51 states that arbitrators on "shall be compensated at a rate consistent with the arbitrator's stated rate of compensation." <u>See</u> Clapp Dec., Exhibit 2. The arbitrators on AAA's current commercial panel in San Diego (as of May 13, 2011) charge an average of $370.56 per hour. <u>See</u> Clapp Dec., para. 6 and Exhibit 3. The arbitrators on AAA's current commercial panel in North Carolina (as of May 13, 2011) charge an average of $293.50 per hour. Clapp Dec., para. 7 and Exhibit 4. For an estimated three-day arbitration, a North Carolina arbitrator would charge

1    an average of $7,044 ($293.50 x 24 hours), and a San Diego arbitrator would charge an average of

2    $8,893.44 ($370.56 x 24 hours), not including preparation time and time for pre-arbitration

3    hearings.  Plaintiffs have no ability to pay these arbitration costs, even if Captain Bounce paid half

4    and Ms. Coviello paid half.  Kalajian Dec., para. 8; Coviello declaration, para. 9.[12]

5              5.       The Limitation on Punitive Damages Is Unconscionable.

6              Finally, Paragraph 21(a) of the Contract states that the arbitrator "shall not be entitled to

7    award punitive damages to any party."  This provision is substantively unconscionable.

8    California's usury laws provide that plaintiffs may be entitled to recover a penalty equal to three

9    times the amount of interest they paid to BFS during the year preceding the filing of the lawsuit.

10   Stock, supra, 35 Cal.2d at 816; Cal. Uncodified Measures & Stats. 1919-1, § 3(a).  Furthermore,

11   plaintiffs may be entitled to punitive damages under Cal. Civ. Code § 3294(a).  C.f. McCollum,

12   supra, 303 U.S. at 247 (usury is a tort claim, not a contract claim).  Paragraph 21(a) denies

13   plaintiffs these statutory remedies.  In Armendariz, the court held that an arbitration provision that

14   limited the plaintiff's statutory remedies, including punitive damages, was unconscionable.

15   Armendariz, 24 Cal.4th at 103-04.  Similarly, in Bridge Fund, the Ninth Circuit held that an

16   arbitration clause that denied the plaintiffs the right to recover punitive damages was

17   unconscionable.  Bridge Fund, 622 F.3d at 1003, 1004; accord Ingle v. Circuit City Stores, Inc.,

18   _____

19   [12]    In Digiacomo v. Expression Center for New Media Inc., 2008 U.S. Dist. Lexis 70099
      (N.D. Cal. Sep. 15, 2008), the court held that the fee structure under the AAA's Commercial

20   Arbitration Rules was not unconscionable because: (1) the Rules permit the waiver of the AAA's
      administrative fees in circumstances of need (see Rule R-49, Clapp Dec., Exhibit 2); and (2) the

21   Rules embrace the use of the Supplementary Procedures for Consumer-Related Disputes, which
      provide that the arbitrator's fees may be reduced or waived in cases of financial hardship.

22   Digiacomo, at *17-18.  Digiacomo is distinguishable for two reasons.  First, unlike the plaintiff in
      Digiacomo, plaintiffs here do not claim that AAA's administrative fees (as opposed to the

23   arbitrator's fees) are unconscionably high.  Second, the Supplementary Procedures for Consumer-
      Related Disputes would not apply in an arbitration between plaintiffs and BFS.  Rule C-1(a) of the

24   Supplementary Procedures states that those procedures apply only when the dispute is between a
      consumer and a business, and only when the product or service that is the subject of the dispute is

25   "for personal or household use."  Clapp Dec., Exhibit 5.  In this case, the parties have agreed that
      the proceeds of the advance were "primarily for business, commercial or agricultural purposes."

26   Contract, para. 24.  Unlike the situation in Diagocomo, the Supplementary Procedures do not

27   provide plaintiffs with any relief from unconscionably high arbitration fees.

28

1    328 F.3d 1165, 1178-79 (9th Cir. 2003) (limit on punitive damages was unconscionable).

2        BFS's reliance on <u>Chin</u>, <u>supra</u>, 194 Cal.App.4th 704, is misplaced.  In that case, the court

3    noted that a damages limitation "may be unconscionable if it contravenes public policy by limiting

4    remedies available in the statue under which a plaintiff proceeds, or if it is one-sided."  <u>Id.</u> at 712.

5    The <u>Chin</u> court found that the limitation on punitive damages was not unconscionable because: (1)

6    it applied equally to both parties; and (2) the plaintiff had failed to assert a claim for which

7    punitive damages were recoverable.  The two statutes cited in the <u>Chin</u> plaintiff's complaint, Bus.

8    & Prof. Code §§ 17200 <u>et seq.</u> and 17500 <u>et seq.</u>, did not permit an award of punitive damages.

9    <u>Chin</u>, 194 Cal.App.4th at 712.  By contrast, in this case, plaintiffs have specifically pled the statute

10   giving rise to treble damages, Cal. Uncodified Initiative Measures and Statutes 1919-1, Section 3

11   (Complaint, para. 22), and have also alleged that they are entitled to punitive damages because

12   BFS's acts were "willful, malicious, oppressive, and done in conscious disregard of the rights of

13   plaintiffs and the Class members" (Complaint, para. 23).  Unlike the plaintiff in <u>Chin</u>, plaintiffs

14   here have alleged claims for which punitive damages are recoverable.

15   V.    <u>THE COURT SHOULD REFUSE TO ENFORCE THE ARBITRATION CLAUSE</u>

16       California Civil Code § 1670.5(a) states: "If the court as a matter of law finds the contract

17   or any clause of the contract to have been unconscionable at the time it was made the court may

18   refuse to enforce the contract, or it may enforce the remainder of the contract without the

19   unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid

20   any unconscionable result."

21       In <u>Armendariz</u>, the California Supreme Court held that Section 1670.5 gives the trial court

22   discretion to decide whether to sever or restrict the unconscionable provisions or, alternatively,

23   refuse the enforce the arbitration clause. <u>Armendariz</u>, 24 Cal.4th at 122.   <u>Armendariz</u> and

24   subsequent decisions have identified four factors the trial court should consider in exercising its

25   discretion: (1) whether the agreement contains more than one unconscionable provision, since

26   "multiple defects indicate a systematic effort to impose arbitration" on the weaker party as an

27   inferior forum that works to the stronger party's advantage (<u>Armendariz</u>, 24 Cal.4th at 124;

28   <u>Nagrampa</u>, 469 F.3d at 1293); (2) whether the unlawful aspects of the agreement can be removed

1    by severing or restricting the unconscionable provisions, because Section 1670.5 does not

2    authorize the court to rewrite the agreement (nor does the FAA) (Armendariz, 24 Cal.4th at 124-

3    25; Nagrampa, 469 F.3d at 1293); (3) whether the stronger party inserted the unconscionable

4    provisions in the contract in bad faith, knowing that the provisions were illegal (Armendariz, 24

5    Cal.4th at 124 n.13; Parada, supra, 176 Cal.App.4th at 1586-87); and (4) which remedy would

6    further the interests of justice (Armendariz, 24 Cal.4th at 127; Fitz v. NCR Corp., 118 Cal.App.4th

7    702, 728 (2004)).  Each of these factors weighs in favor of refusing to enforce the arbitration

8    clause instead of severing or restricting the unconscionable provisions.

9                    1.    The Arbitration Clause Contains Multiple Unconscionable Terms.

10           As discussed in Section IV(B) above, the arbitration clause contains at least five

11   unconscionable terms.   In Armendariz, the court found that the existence of just two

12   unconscionable terms (a limit on damages and a non-mutual arbitration clause) indicated a

13   systematic effort by the employer to impose arbitration on the employee as an inferior forum, such

14   that severance or restriction of those terms would be inappropriate.  Armendariz, 24 Cal.4th at

15   124; c.f. Little v. Auto Stielger, Inc., 29 Cal.4th 1064, 1075 (2003) (severance was appropriate

16   when there was only one unconscionable term).  Similarly, in Nagrampa, the Ninth Circuit held

17   that an agreement containing two unconscionable terms (a venue selection clause and a provision

18   allowing the stronger party to seek provisional remedies in court) was "so permeated by

19   substantive unconscionability" that it could not be cured by severance.  Nagrampa, 469 F.3d at

20   1293.  The arbitration clause in this case – which contains a limit on damages, a non-mutual

21   arbitration clause, an unconscionable venue selection clause, plus two other unconscionable terms

22   – is more egregious than the clauses that the Armendariz and Nagrampa courts refused to enforce.

23   Accordingly, severance is improper.  See also, Ferguson, 298 F.3d at 788 (refusing to sever three

24   terms).

25                    2.    The Court Would Need to Rewrite the Contract.

26           The Court cannot remove the unconscionable terms from the Contract by severing or

27   restricting them; instead, the Court would be forced to rewrite the Contract, which it is not

28   permitted to do.  Nagrampa, 469 F.3d at 1293.  In this case, there are at least two unconscionable

1  aspects of the arbitration clause that cannot be cured through severance or restriction: (1) the lack

2  of mutuality; and (2) the venue selection clause.

3      First, courts have found that it is impossible to cure a lack of mutuality by severing or

4  restricting parts of the arbitration clause; instead, those courts have refused to enforce the

5  arbitration clause altogether.  <u>Flores</u>, 93 Cal.App.3d at 857 ("[Defendant] has cited no precedent,

6  and we are aware of none, in which a unilateral agreement to arbitrate was saved by severing the

7  offending provisions.") <u>See also</u>, <u>Nagrampa</u>, 469 F.3d at 1294; <u>Armendariz</u>, 24 Cal.4th at 124-25;

8  <u>O'Hare</u>, 107 Cal.App.4th at 279; <u>Abramson v. Juniper Networks, Inc.</u>, 115 Cal.App.4th 638, 666-

9  67 (2004).  In this case, the Court cannot cure Paragraph 21's lack of mutuality simply by striking

10  Paragraph 21(b), entitled "Reservation of Rights."  Paragraph 21(b) states that the agreement to

11  arbitrate does not <u>limit</u> BFS's rights to exercise self-help and seek injunctive relief in court.

12  However, these rights arise from <u>other</u> sections of the Contract, including Paragraph 9(c) (BFS's

13  right to foreclose on plaintiffs' Collateral and force a public sale), 9(d) (BFS's right to collect

14  money and sue in plaintiffs' name), Paragraphs 8(d) and 25 (BFS's right to set-off indebtedness

15  against plaintiffs' bank accounts and other property without notice to plaintiffs), Paragraph 6(d)

16  (BFS's right to seek injunctive relief to stop a breach of confidentiality), and Paragraph 23 (BFS's

17  right to file a lawsuit or exercise any other rights in any state or jurisdiction, notwithstanding the

18  North Carolina venue clause).  Thus, in order to cure the lack of mutuality, at a minimum, the

19  Court would need to rewrite Paragraphs 8(d), 9(c), 9(d), 23, and 25.

20      <u>Flores</u> is closely on point.  In that case, the arbitration clause between a borrower and a

21  lender contained an exception that reserved the lender's right to obtain an injunction and to

22  exercise self-help remedies (foreclosure and set-off) outside of arbitration.  <u>Flores</u>, 93 Cal.App.4th

23  at 850.  The lender argued that this unconscionable provision could be severed, but the court

24  disagreed.  The <u>Flores</u> court found that the lack of mutuality appeared not only in the arbitration

25  clause's reservation of remedies, but also in the body of the loan agreement that gave the lender

26  the right to exercise those remedies in the first place.  <u>Id.</u> at 857.  Therefore, the court found that

27  "no single provision can be stricken to remove the unconscionable taint."  <u>Id.</u>  Likewise, in this

28  case, merely striking the reservation of rights in Paragraph 21(b) would do nothing to eliminate

1    the one-sided and unconscionable provisions in Paragraphs 8(d), 9(c), 9(d), 23, and 25 of the

2    Contract.  The only effective remedy is to refuse to enforce the arbitration clause.

3         Nagrampa is also instructive, because the structure of the arbitration clause was similar to

4    Paragraph 21 in this case.  The Nagrampa arbitration clause, like Paragraph 21(a), required the

5    parties to arbitrate any dispute arising from their franchise agreement in accordance with AAA

6    rules.  Nagrampa, 469 F.3d at 1265.  However, the Nagrampa arbitration clause also contained the

7    following reservation of rights, which is similar to Paragraph 21(b) in this case: "[T]his clause

8    shall not be construed to limit MailCoups' right to obtain any provisional remedy, including,

9    without limitation, injunctive relief from any court of competent jurisdiction, as may be necessary

10   in MailCoups' sole and subjective judgment, to protect its Service Marks and proprietary

11   information."  Id. at 1265.  The Nagrampa court held that the arbitration clause's lack of mutuality

12   could not be cured by severance or any other action short of rewriting the contract.  Id. at 1293.

13   Accordingly, the court refused to enforce the arbitration clause.  Because the arbitration clause in

14   Nagrampa is similar in form and substance to the arbitration clause in this case, this Court should

15   exercise the same remedy as the Nagrampa court and refuse to enforce the clause in its entirety.

16        The second unconscionable term that cannot be cured through severance or restriction is the

17   requirement that the arbitration take place in Charlotte, North Carolina.  In Bridge Fund, supra, the

18   Ninth Circuit found that a Texas venue selection clause was unconscionable.  Bridge Fund, 622

19   F.3d at 1006.  The defendant argued that the venue selection clause should have been severed from

20   the rest of the agreement, but the Ninth Circuit disagreed, holding that the court would have had to

21   rewrite the offending paragraph.  Id.[13]  In this case, as in Bridge Fund, the venue selection clause

22   would need to be rewritten to require that the arbitration take place in California.  Merely striking

23   _____

24   [13]      The Ninth Circuit's opinion does not quote the venue selection clause in detail, but the
actual arbitration agreement is available on PACER.  Clapp Dec., para. 9 and Exhibit 6.

25   Paragraph 26.2 of the agreement simply states: "The Arbitrator shall hear the dispute in Dallas
County, Texas …."  Similarly, the venue selection clause in this case states: "[A]ny dispute arising

26   out of or in connection with this Agreement shall be settled exclusively and finally by binding
arbitration conducted in the City of Charlotte, North Carolina …."  Contract, para. 21(a). In

27   substance, the two clauses are indistinguishable.

28

PLTS' OPPOSITION TO DEFS' MOTION TO STAY AND COMPEL ARBITRATION        3:11-cv-0858-JLS-WMC

the clause and defaulting to the AAA's Commercial Arbitration Rules would not solve the problem, because Rule R-10 states that, if the parties do not agree on the location of the arbitration, the AAA decides the location, and its decision is final and binding.  Clapp Dec., Exhibit 2.  Delegating the venue decision to AAA does not guarantee that the arbitration will take place in California and, therefore, does not remove the unconscionable taint from the Contract. See Ferguson, supra, 298 F.3d at 785 n.8 (the fact that the arbitrator had the discretion to award arbitration fees to a prevailing plaintiff did not mitigate the fact that agreement's fee-sharing clause was unconscionable).

### 3.   BFS Inserted the Unconscionable Terms in Bad Faith.

A court can refuse to enforce an arbitration agreement if it finds that the stronger party inserted unconscionable terms in bad faith.  Armendariz, 24 Cal.4th at 124 n.13; Parada, 176 Cal.App.4th at 1586.  In such a case, "the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice."  Armendariz, 24 Cal.4th at 124 n.13.  The test for bad faith is whether the law was clear at the time the agreement was signed that the offending terms were unconscionable.  Gutierrez v. Autowest, Inc., 114 Cal.App.4th 77, 93 (2003); Parada, 176 Cal.App.4th at 1586 (finding bad faith because, at the time the agreement was signed, several published decisions indicated that the subject terms were improper).

At the time that Mr. Kalajian signed the Contract in August 2009, the law was clear that: (1) non-mutual arbitration clauses are unconscionable (Armendariz, 24 Cal.4th at 119, decided in 2000); Nagrampa, 469 F.3d at 1286, decided in 2006); (2) provisions allowing the stronger party to foreclose on the weaker party's property outside of arbitration are unconscionable (Flores, 93 Cal.App.4th at 853, decided in 2001); (3) venue selection clauses containing unreasonable place and manner restrictions are unconscionable (Bolter, 87 Cal.App.4th at 909, decided in 2001); and (4) limits on statutory remedies such as punitive damages in arbitration are unconscionable (Armendariz, 24 Cal.4th at 103-04, decided in 2000; Ingle, 328 F.3d at 1178-79, decided in 2003).  By its own admission, BFS has been a leader in the merchant cash advance industry since 2002

1   and does business in all 50 states plus Puerto Rico.  Clapp Dec., Exhibit 1.  If BFS is going to do

2   business with California citizens, BFS is responsible for knowing California law.  BFS's insertion

3   of unconscionable provisions into the Contract was in bad faith, so severance should not be

4   granted.

5                4.      <u>Refusing Arbitration Would Promote the Interests of Justice.</u>

6        Finally, the interests of justice would be served by denying enforcement of the arbitration

7   clause rather than severing or restricting the unconscionable terms.  Severance is proper in two

8   situations: (1) when there is an existing contractual relationship between the parties and

9   conserving that relationship would not condone an illegal scheme; or (2) when one party would

10   gain an undeserved benefit or suffer an undeserved detriment from voiding the entire agreement.

11   <u>Fitz</u>, 118 Cal.App.4th at 727 <u>citing</u> <u>Armendariz</u>, 24 Cal.4th at 123-24.

12        Neither situation is present here.  First, there is no ongoing contractual relationship between

13   plaintiffs and BFS; plaintiffs have fully repaid their loans.  Kalajian Dec., para. 10; Colviello Dec.,

14   para. 11.  <u>See</u> <u>Fitz</u>, 118 Cal.App.4th at 727 (no ongoing relationship because plaintiff's

15   employment had ended).  Second, severing the unconscionable terms and requiring plaintiffs to

16   arbitrate their claims would allow BFS to benefit from its oppressive conduct.  <u>Fitz</u> at 727

17   (refusing to sever unconscionable terms because the employer would benefit from the

18   unconscionable agreement it had imposed on plaintiff).  Accordingly, the interests of justice would

19   served by denying enforcement of the arbitration clause.  <u>Abramson</u>, 115 Cal.App.4th at 667

20   (because severing the unlawful terms would benefit the employer and harm the employee, the

21   court properly refused to compel arbitration).

22   VI.     <u>THE CLASS ACTION WAIVER IS INAPPLICABLE</u>

23        By its terms, the class action waiver in Paragraph 21(a) of the Contract is limited to

24   arbitrations, not lawsuits in court.  Paragraph 21(a) states in relevant part: "The parties hereto

25   acknowledge and agree that this <u>arbitration</u> shall be solely between the parties to this agreement

26   and no <u>class arbitration</u> or other representative action may be undertaken by the <u>arbitrators</u>."  <u>Id.</u>

27   (emphasis added).  Since the arbitration clause is unenforceable, the parties' dispute will be

28   decided by this Court rather than by an arbitrator, so the class action waiver does not apply.

1  Furthermore, the policy reasons that led the <u>AT&T</u> court to uphold a class action waiver in the

2  context of an arbitration – namely, that classwide arbitration is inconsistent with the informal,

3  bilateral process contemplated by the FAA (<u>AT&T</u>, 2011 U.S. Lexis at 3367, at **25-27) – are not

4  present in this lawsuit.

5  VII.    <u>CONCLUSION</u>

6          For all of the foregoing reasons, BFS's motion to stay this action and compel arbitration

7  should be denied.

8

9  Dated: May 18, 2011                    DOSTART CLAPP & COVENEY, LLP

10

11                                         s/James F. Clapp
                                           _____
                                           JAMES F. CLAPP
12  437848.1                               Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28