# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| CAPTAIN BOUNCE, INC.; et al., | CASE NO. 11-CV-858 JLS (WMC) |
|---|---|
| Plaintiffs, | **ORDER: (1) GRANTING PLAINTIFFS' EX PARTE MOTION FOR LEAVE TO FILE SURREPLY; AND (2) GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION** |
| vs. | |
| BUSINESS FINANCIAL SERVICES, INC.; et al., | |
| Defendants. | |

Presently before the Court is Defendants' motion to compel arbitration and stay the action pending arbitration. (Mot. to Compel Arbit., ECF No. 5.) Also before the Court are Plaintiffs' opposition (ECF No. 12), Defendants' reply (ECF No. 13), Plaintiff's ex parte motion for leave to file a surreply (ECF No. 18) and the proposed surreply (ECF No. 18-2), as well as Defendants' opposition to the motion for leave to file a surreply (ECF No. 20). Plaintiffs have also filed several notices of recent authority in opposition to Defendants' motion to compel arbitration (ECF Nos. 22, 33, 36), and evidentiary objections to Defendants' declarations and exhibits (ECF No. 19), and Defendants have filed a response to Plaintiffs' notice of recent authority (ECF No. 34). Also pending in this case is Plaintiff's "motion for corrective action," which essentially seeks injunctive relief. (ECF No. 23.) The Court took the mater under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the law, the Court **GRANTS** Plaintiffs' motion for leave to file a surreply, and **GRANTS** Defendants' motion to compel arbitration and stay the action.

**BACKGROUND**

Plaintiffs' claims concern Defendants' alleged practice of charging excessive interest rates and other unfair business practices and violations of California's usury laws in their contracts for "merchant cash advances." (Compl., Ex. A to Notice of Removal, ECF No. 1.) Plaintiffs filed their complaint in state court on March 10, 2011, on behalf of themselves and a putative class of others similarly situated who entered into merchant cash advance transactions with Defendants during a four year period. On April 22, 2011, Defendants removed the case to this Court, asserting federal jurisdiction based on complete diversity of citizenship, pursuant to 28 U.S.C. § 1332(d). On April 29, 2011, Defendants moved to compel arbitration of Plaintiffs' claims and stay this action pending arbitration.

The named plaintiffs are Captain Bounce, Inc. (Captain Bounce), a California corporation that sells inflatable jumpers and slides primarily for use at children's parties, and KC Dancegear (KC), a sole proprietorship in California that sells dance products such as ballet shoes and leotards. (Pl.'s Opp'n 1, ECF No. 12.) Defendant Business Financial Services, Inc. (BFS) is a North Carolina corporation, and Defendants Business Cash Advance, Inc., and Faton, Inc., are Florida corporations.[1] Defendants do business in California, providing a type of financing to small- and mid-size businesses termed "merchant cash advances." In such transactions, a financing company (such as BFS) advances a sum of money to a business in exchange for the assignment of a set amount of that business' future credit card receivables. (Mot. to Compel Arbit. 3.) The business directs its credit card processing company to remit to BFS a set percentage of each payment the processor receives from a credit card issuer, referred to as the "Settlement Percentage." (*Id.*) Thus, if the Settlement Percentage is 10%, the credit card processor will remit 10% of each credit card payment to BFS before paying out 90% to the business (less the processor's fees). (*Id.* at 3-4.) This process will continue until BFS has received the total assigned value of credit card receivables.

---

[1] Although Plaintiff's complaint states all of its causes of action against all three Defendants, and the motion to compel arbitration is also brought by all three Defendants, the factual allegations and parties' arguments are often stated in terms of actions taken by BFS. Thus, for ease of reference, the Court will use the terms "Defendants" and "BFS" interchangably without attempting to distinguish between the Defendants for the purposes of this motion.

Plaintiffs entered into three different merchant cash advances with BFS in 2009 and 2010 (the Agreements). On August 7, 2009, Captain Bounce entered into an "Accounts Receivable Purchase Agreement" with BFS. (Compl. 3, Ex. 1.) Under the terms of this agreement, BFS advanced $40,000 to Captain Bounce in exchange for $58,000 of Captain Bounce's future credit card receivables, with a Settlement Percentage of 16% of each consumer credit card transaction to go to BFS. (Mot. to Compel Arbit. 4.) BFS collected the entire $58,000 of Captain Bounce's receivables pursuant to this agreement. On June 22, 2010, KC entered into a similar agreement with BFS, accepting an advance of $6,500 in exchange for $8,775 of future credit card receivables, with a Settlement Percentage of 14%. (*Id.* at 5.) KC entered into a second such agreement with BFS on October 10, 2010 for another $5,000 in exchange for $6,750 of future credit card receivables. These agreements were apparently terminated when KC paid the balance of the aggregate amount of receivables in a lump sum payment. (*Id.*)

At issue here, these three agreements contain the same provision regarding arbitration, which provides in relevant part:

> 21. <u>Arbitration</u>. (a) Notwithstanding anything to the contrary contained herein, any dispute arising out of or in connection with this Agreement shall be settled exclusively and finally by arbitration conducted in the City of Charlotte, North Carolina, under the commercial arbitration rules of the American Arbitration Association ("the AAA"), such arbitration to apply the laws of the State of North Carolina (without giving effect to conflict of laws principles). The arbitrator at such arbitration shall not be entitled to award punitive damages to any party, and the costs and fees of such arbitration shall be borne by the losing party. The parties hereto acknowledge and agree that this arbitration shall be solely between the parties to this agreement and no class arbitration or other representative action may be undertaken by the arbitrators. The arbitration shall be conducted by one neutral arbitrator, such arbitrator shall be appointed by the AAA.
> (b) Reservation of rights. Nothing in this arbitration provision shall be deemed to . . . (iii) limit the right of the Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver. The Purchaser may exercise such self help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document. Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning to resort to such remedies.

(Compl. Ex. 1 at 8; Ex. 2 at 8.) Defendants now seek to compel arbitration of Plaintiff's claims under this provision. Plaintiffs challenge the validity of the arbitration provision as unconscionable, and assert that the Court should refuse to enforce the arbitration clause.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving transactions in interstate commerce. *See* 9 U.S.C. § 1, et seq.; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement to arbitrate the dispute. 9 U.S.C. § 4. The FAA reflects both a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Conception*, — U.S. —, 131 S.Ct. 1740, 1745 (2011); *see also Kilgore v. KeyBank, Nat'l Ass'n*, — F.3d —, 2012 WL 718344 at *4 (9th Cir. Mar. 7, 2012) ("The United States Supreme Court has repeatedly explained that the FAA was intended to reverse the long history of judicial refusal to enforce arbitration agreements.") (citing cases); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (the FAA "not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, and a federal common law of arbitrability which preempts state law disfavoring arbitration.") The FAA also includes a savings clause that allows arbitration agreements to be invalidated by courts only "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added).

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, a district court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). In determining the validity of an arbitration agreement, the Court applies state law contract principles. *Circuit City*, 279 F.3d at 892; *see also* 9 U.S.C. § 2. However, the FAA does not permit arbitration agreements to be declared unenforceable by defenses "that apply only to

arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S.Ct. at 1746. As the Supreme Court's recent opinion in *AT&T Mobility LLC v. Concepcion* makes clear, if a generally applicable doctrine, such as unconscionability, is applied by a particular state in a fashion that disfavors arbitration, then that rule interferes with arbitration and is preempted by the FAA. *Id.* at 1747-50; *see also Kilgore*, 2012 WL 718344 at *5 ("In short, a state statute or judicial rule that applies only to arbitration agreements, and not to contracts generally, is preempted by the FAA.") Thus, "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Concepcion* at 1753.

If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Whitter Reynolds, Inc v. Byrd*, 470 U.S. 213, 218 (1985). Further, the Court must stay litigation of arbitral claims until such arbitration "has been had according to the terms of the agreement." 9 U.S.C. § 3.

## ANALYSIS

Ordering the parties to a case to arbitration requires that those parties have contractually agreed to settle disputes through arbitration. 9 U.S.C. § 2. Here, Plaintiffs admit that they signed the Agreements at issue, that an arbitration provision exists in these Agreements, that the FAA applies, and that their claims fall within the scope of the arbitration clause. (Pl.'s Opp'n at 3.) Thus, the focus of Plaintiffs' opposition to the instant motion is their allegation that the arbitration clause is unconscionable for at least four different reasons, that the unconscionable aspects of the clause cannot be severed, and that consequently the Court should refuse to enforce the arbitration clause. (*Id.* at 2.) Plaintiffs, as the parties challenging the enforceability of the arbitration clause, "bear[ ] the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The Court must first determine which state's

//

1  law should govern the determination of whether the arbitration agreement is unenforceable.  The
2  Court then addresses each of Plaintiffs' unconscionability arguments in turn.

**1. Choice of Law**

Federal courts sitting in diversity apply the law of the forum state when making choice of law determinations. *See Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam). When an agreement contains a choice of law provision, California courts apply the parties' choice of law if "the chosen state has a substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court,* 834 P.2d 1148, 1152 (Cal. 1992). If so, "the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* If the court finds such a conflict, it must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue." *Id.* (quoting Restatement (Second) of Conflict of Laws § 187, subd. (2)). California choice of law principles indicate that the state with the materially greater interest is the state which, "in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1003 (9th Cir. 2010). "If California possesses the materially greater interest, the court applies California law despite the choice of law clause." *Id.*

Here, neither party urges the Court to apply North Carolina law, even though the Agreements contain a North Carolina choice of law clause. In its motion to compel arbitration, Defendants state that choice of state law is not relevant to this analysis because the FAA alone should apply. (Mot. to Compel Arbit. 6.) However, Defendants then go on to cite and apply largely California law, occasionally citing to North Carolina law in the alternative. (*See* Mot. to Compel Arbit. 8-14.) For their part, Plaintiffs argue California law should apply because application of North Carolina law would "violate California's fundamental public policy [which strongly opposes] usury and permits the award of treble damages and punitive damages to deter usurious transactions." (Pl.'s Opp'n at 5-6) (citing cases). Plaintiffs also argue that California has a greater interest in protecting hundreds of California "individuals and businesses that allegedly

1  received usurious loans outweighs North Carolina's interest in protecting the out-of-state activities
2  of one North Carolina corporation." (*Id.*); *see also Brack v. Omni Loan Co.*, 164 Cal. App. 4th
3  1312, 1329 (2008) ("Here, the application of Nevada law would deprive a substantial segment of
4  the borrowing public in this state of the substantive and regulatory protection California affords all
5  of its other consumers. . . . [And] nothing in Nevada law prevented [the defendant] from fully
6  complying with California law.") In reply, Defendants did not object to the application of
7  California law and again cited to California law themselves.

8  Although North Carolina certainly has "a significant general interest in enforcing contracts
9  executed there and by its citizens," the Court agrees with Plaintiffs that California has "a
10 substantial, case-specific interest" in protecting its resident businesses through its statutory
11 protections against usury and other unfair business practices. *See Bridge Fund*, 622 F.3d at 1004.
12 Defendants have not argued or presented any evidence that North Carolina has a significant policy
13 of protecting lenders engaged in merchant cash advances. Thus, applying California law to
14 determine whether the arbitration provision is unconscionable, even though North Carolina law
15 might lead to a different result, would not contravene a fundamental North Carolina public policy.
16 *See id.* Further, because the Court ultimately determines that the arbitration agreement must be
17 enforced even under California law, the Court may presume, without deciding, that California law
18 governs Plaintiffs' claims. *See Kilgore,* 2012 WL 718344 at *4.

19 **2. Unconscionability**

20 Unconscionability has both a procedural and a substantive component under California
21 law. Both components must be present before a court may refuse to enforce a contract.
22 *Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 114 (2000). However, both
23 components need not be present to the same degree, and courts generally employ a "sliding scale"
24 approach to evaluate unconscionability. *Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007);
25 *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ("even if the evidence of
26 procedural unconcscionability is slight, strong evidence of substantive unconscionability will tip
27 the scale.")

28 //

*(A) Procedural Unconscionability*

The procedural prong of the unconscionability analysis focuses on the circumstances surrounding the negotiation of the contract. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). Specifically, procedural unconscionability can arise from oppression or surprise. *Armendariz*, 24 Cal. 4th at 114. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008) (internal quotations omitted). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

Whether an agreement was a "contract of adhesion" is an important inquiry in California's unconscionability analysis, although it is unclear precisely how it fits into the overall inquiry. *See Nagrampa*, 469 F.3d at 1281 (stating the lack of clarity in California law regarding whether a contract of adhesion is automatically oppressive or whether oppression is a separate element, but concluding that, under either test, finding an arbitration provision was presented on a "take-it-or-leave-it basis" and was oppressive due to unequal bargaining power satisfies procedural unconscionability requirements). A contract of adhesion is "a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). Under California law, a court's finding that a contract was one of adhesion establishes at least a minimal degree of procedural unconscionability. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010); *Cornejo v. Spenger's Fresh Fish Grotto*, 2010 WL 1980236 at \*6-7 (N.D. Cal. May 17, 2010) ("The court holds that the Arbitration Agreement, as an adhesion contract, possessed some, but not a substantial degree of procedural unconscionability"); *Sanchez v. Valencia Holding Co., LLC*, 201 Cal.App.4th 74, 91 (2011).

Here, Plaintiffs contend the Agreements were contracts of adhesion because they were drafted by BFS and presented on a "take-it-or-leave-it basis" with only the opportunity to adhere to the contract or reject it, without any explanation of the terms of the arbitration clause. (Pl.'s Opp'n 8-9.) According to Plaintiffs, they were financially desperate and BFS had "vastly superior

bargaining power," tendering the Agreements for Plaintiffs consideration with an ultimatum that no modifications were allowed and that they "needed to sign the Contract right away or else the deal was 'off the table.'" (*Id.*) Defendants counter that the Agreements were not contracts of adhesion, stating that the parties negotiated the financial terms of the Agreements and emphasizing, in particular, that Captain Bounce successfully obtained a larger advance than BFS initially offered. (Reply 4, ECF No. 13.) According to Defendants, the commercial context of the transaction – that both contracting parties are businesses – is highly relevant to this inquiry into bargaining power. (*Id.* at 3-4.) BFS also disputes Plaintiffs' characterization of their own position as "financially desperate," stating that both businesses had "solid credit histories" and "wanted funds to expand their businesses." (*Id.* at 1, 5.) Further, BFS argues that the "market for business financing in California is extremely competitive" and that alternative sources of funding were readily available to Plaintiffs. (Mot. to Compel Arbit. 10.)

Here, the Agreement unquestionably contains some characteristics of a contract of adhesion: it is a standardized contract drafted by BFS, the party offering the financing, and was tendered at some point with the understanding that the terms could not be further negotiated. However, for the reasons stated below, the entirety of the circumstances do not present the picture of a paradigmatic contract of adhesion. The Court finds that these circumstances have a significant impact on the procedural unconscionability analysis as a whole.

As an initial matter, the Court agrees with Defendants that the business-to-business context of the Agreements is relevant. As commercial entities seeking financing for expansion of their businesses, Plaintiffs are sophisticated borrowers distinguishable from the consumer or employee plaintiff who is a party to the typical unconscionable contract. *See A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 489 (1982) ("Generally, courts have not been solicitous of businessmen in the name of unconscionability . . . probably because courts view businessesmen as possessed of a greater degree of commercial understanding and substantially more economic muscle than the ordinary consumer.") In so stating, the Court emphasizes that the commercial context of an agreement is not dispositive of unconscionability, and that the same standard for determining unconscionability applies to both commercial and non-commercial contracts. Indeed,

California courts have recognized that experienced but legally inexpert businessmen may be unfairly surprised or have unequal bargaining power in the face of unconscionable contract terms. *Id.; see also Nagrampa*, 469 F.3d at 1283 ("[T]he sophistication of a party, alone, cannot defeat a procedural unconscionability claim.")  However, Plaintiffs' status as merchants, not consumers, is undoubtedly a factor properly considered in the Court's unconscionability analysis, as "it is reasonable to expect even an unsophisticated businessman to carefully read, understand, and consider all the terms of an agreement affecting such a vital aspect of his business." *Morris v. Redwood Empire Bancorp,* 128 Cal. App. 4th 1305, 1322 (2005); *see also West v. Henderson*, 227 Cal. App. 3d 1578, 1587 (1991) ("Parties to commercial contracts fail to read them at their own peril.")

In this case, Plaintiffs have not shown that they had no meaningful choice in choosing to sign Agreements with BFS.  They have not argued that they could not have contracted for a merchant cash advance or other form of financing from another source on different terms, or alleged that Defendants' competitors all used the same arbitration clauses. In *Morris*, the California Court of Appeal rejected a businessman's arguments that the terms of a merchant credit card agreement were procedurally unconscionable, in circumstances similar to these, because he could not show an absence of meaningful choice. *Morris*, 128 Cal. App. 4th. at 1320.  In that case, the court found the plaintiff "failed to allege he could not have obtained merchant credit card services from another source on different terms.  Moreover, unlike situations where the weaker party is under immediate pressure not to seek out alternative sources, [the plaintiff] was under no such compulsion in attempting to start his business. . . . The only oppression on [the plaintiff] . . . was self-imposed.  [Plaintiff] was not in pursuit of life's necessities; this was a business venture." *Id.* (internal quotations and citations omitted.)  Although contracts may certainly be found to be oppressive despite the availability of alternatives, such as where the opportunity to seek an alternative of supply is not "realistic," the existence of reasonable market alternatives may defeat a finding of oppressiveness even where the agreement is a contract of adhesion. *Id.* at 1320.  Plaintiffs now claim their businesses were near failure and that they needed the money urgently to keep afloat, supporting these assertions only with Declarations from the

1 business-owners, but even accepting this as true, nothing in the record evinces that BFS knew of
2 Plaintiffs' financial instability. To the contrary, the weight of evidence indicates BFS thought
3 Plaintiffs had good credit and were low risk, and that Plaintiffs sought money for business
4 expansions, not the payment of debts already incurred.
5       Further, Plaintiffs had at least some opportunity to negotiate terms and were given the
6 opportunity to review the agreement. A mere stated inability to afford a lawyer does not absolve a
7 party to a contract of the duty to review the agreement before signing it, particularly in the
8 commercial context. And the statement on the e-mail cover sheet accompanying the contract
9 tendered by BFS that any modification will render the Agreements null and void does not alone
10 indicate the arbitration provision was included on a "take-it-or-leave-it" basis. As Defendants
11 argue, this statement correctly reflects the general principle of contract law that the qualified
12 acceptance of an offer is treated as a rejection and counter-offer. *See Born v. Koop*, 200 Cal.
13 App. 2d 519, 524 (1962). The e-mail goes on to state that Plaintiffs should "contact [their]
14 Funding Advisor at any time" with any questions. Even accepting Plaintiffs' version of events as
15 true, the evidence shows that BFS presented the contracts following some period of negotiation
16 and discussion over financing terms and other matters. Although the parties agree they never in
17 fact negotiated the terms of the arbitration provision, the fact that at least some of the terms had
18 been subject to debate negates the impression that the contract was truly "take-it-or-leave-it." In
19 fact, Plaintiffs do not even allege they desired to negotiate the arbitration provision, instead stating
20 that they were "financially desparate," could not afford a lawyer, and because the money was
21 needed quickly they "signed the Contracts and returned them quickly, without reading them
22 carefully." (Pl.'s Opp'n at 8; Kalajian Decl. ISO Pl.'s Opp'n ¶ 5, ECF No. 12-8.) Thus, even
23 Plaintiff's evidence does not show Defendants denied Plaintiffs the opportunity to review or
24 discuss the terms of the Agreement; any perceived hurry or failure to carefully examine the
25 Agreements was of Plaintiffs' volition by their own admission. Nor was the arbitration provision
26 hidden or disguised. Rather, just as in *West* and *Morris*, Plaintiffs, knowing better than anyone the
27 true extent of their inexperience in obtaining business financing, signed the Agreements without
28 consulting an attorney. *See West*, 227 Cal. App. 3d at 1587; *Morris*, 128 Cal. App. 4th at 1320-21.

1    Consequently, here the Court finds the evidence of procedural unconscionability is
2 minimal.  However, the Court continues on to address the substantive unconscionability of the
3 arbitration provision, under the sliding scale approach employed by California courts.  *See*
4 *Nargrampa*, 469 F.3d at 1284; *see also West*, 227 Cal. App. 3d at 1587-88 (stating that a
5 compelling showing of substantive unconscionability could potentially overcome a weaker
6 showing of procedural unconscionability.)
7 *(B)  Substantive Unconscionability*
8    Under the rule articulated above, because the arbitration agreement is only minimally
9 procedurally unconscionable, in order to establish that the agreement should be unenforceable,
10 Plaintiffs must demonstrate that the terms of the agreement are substantively unconscionable to a
11 significant degree.  *See Cornejo*, 2010 WL 1980236 at *7; *West*, 227 Cal. App. 3d at 1587-88.
12 The Court finds they have not done so here.
13    The Court's inquiry into the substantive unconscionability of the arbitration provision
14 focuses on discerning overly harsh or one-sided results.  *Armendariaz*, 24 Cal. 4th at 114.
15 Plaintiffs assert that the arbitration clause is substantively unconscionable based on four different
16 terms contained therein.[2]  The Court examines each of these in turn. In each case, Defendants
17 argue both that the arbitration clause is not unconscionable and that the anti-arbitration
18 unconscionability rules are preempted by the FAA.
19 *(i)  Forum Selection Clause*
20    Plaintiffs state the arbitration provision's forum selection clause, which provides for
21 arbitration located in Charlotte, North Carolina, is unconscionable. (Pl.'s Opp'n. 2.)  Under
22 California law, "forum selection clauses are valid and should be given effect unless enforcement of
23 the clause would be unreasonable." *Intershop Commc'ns, AG v. Superior Court,* 104 Cal. App.
24 4th 191, 196 (2002).  "Forum selection clauses *are* important in facilitating national an
25 international commerce, and as a general rule should be welcomed." *Wimsatt v. Beverly Hills*
26 *Weight Loss Clinic Int'l, Inc.*, 32 Cal. App. 4th 1511, 1523 (1995).  But if the determination of the
27
28    [2] Although Plaintiffs assert that the arbitration provision contains an unconscionable class action waiver in their Complaint, they appear to have abandoned that argument following the Supreme Court's decision in *Concepcion*.  (See Compl. ¶ 32; Pl.'s Opp'n 2.)

1  venue for arbitration is "unduly oppressive," or has the effect of shielding the stronger party from
2  liability, then the forum selection provision is unconscionable. *Nagrampa*, 469 F.3d at 1287
3  (citing *Bolter v. Superior Court,* 87 Cal. App. 4th 900, 909-10 (2001); *Comb v. Paypal, Inc.*, 218
4  F. Supp. 2d 1165, 1177 (N.D. Cal. 2002)).  Thus, if "proceedings in the contractual forum will be
5  so gravely difficult and inconvenient that the resisting party will for all practical purposes be
6  deprived of his day in court," a court may find enforcement of the venue selection clause would be
7  unreasonable, and thus that the term is unconscionable. *Nagrampa*, 469 F.3d at 1287 (quoting
8  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632 (1985)).

9          In determining the reasonableness of a forum selection provision, the respective
10 circumstances of the parties, broadly defined, are relevant.  For example, in *Wimsatt*, 32 Cal. App.
11 4th at 1523, the California Court of Appeal remanded the case to the trial court to determine
12 whether a forum selection clause was unconscionable where certain state laws operated to benefit
13 in-state investors such that the out-of-state party's substantial legal rights would be significantly
14 impaired by the enforcement of the clause.  In *Bolter*, 87 Cal. App. 4th at 909, the Court of Appeal
15 found a forum selection clause unconscionable where small "Mom and Pop" California franchisees
16 were required to travel to Utah to arbitrate against an international carpet-cleaning franchisor who
17 had relocated after creating the franchises, because the remote forum was unanticipated and the
18 expense would create serious hardship for the franchisees which would effectively preclude them
19 from asserting any claims.  In *Nagrampa*, 469 F.3d at 1288-90, the Ninth Circuit considered the
20 hardship the forum selection clause would impose on the franchisees in traveling to the out-of-
21 state forum, the significant California protections that would be lost if another state's laws were
22 applied to the arbitration, the unequal bargaining power of the parties resulting in an oppressive
23 contract in adhesion, and the fact that the franchisees had no reason to expect the arbitration would
24 take place in an out-of-state forum where the franchise-offering circular suggested the out-of-state
25 forum selection and choice of law clauses may not be enforceable under California law,
26 concluding that the forum selection provision was unconscionable.

27         The forum selection clause at issue here provides that "any dispute arising out of or in
28 connection with this Agreement shall be settled exclusively and finally by arbitration conducted in

1   the City of Charlotte, North Carolina, under the commercial arbitration rules of the American
2   Arbitration Association ("the AAA"), such arbitration to apply the laws of the State of North
3   Carolina."  (Compl., Ex. 1 at 8.)  Plaintiffs argue the Court should find this clause unenforceable
4   because traveling to Charlotte, North Carolina would present a severe financial hardship.  (Pl.'s
5   Opp'n 16.)  Although Plaintiffs correctly point out that financial hardship was considered by the
6   courts in *Nagrampa* and *Bolter*, in both cases that was only one of several factors indicating the
7   clause was unconscionable.  Plaintiffs have not argued that they had no reason to expect arbitration
8   would take place in North Carolina, or that North Carolina does not provide protections against
9   usury and unfair business practices such that their rights would be lost if the forum selection
10  provision were enforced.  Although hardship to Plaintiffs in traveling to North Carolina is certainly
11  one circumstance to be considered, the Court finds that Plaintiffs have not made a sufficient
12  showing that the forum selection provision is unduly oppressive, or has the effect of shielding the
13  stronger party from liability.  Where, as here, Plaintiffs must make a particularly strong showing of
14  substantive unconscionability because of the slight degree of procedural unconscionability found,
15  the Court concludes this burden has not been met.
16  *(ii)  Limitation on Punitive Damages*
17         Plaintiffs also assert the arbitration clause is unconscionable because it prevents the
18  arbitrator from awarding punitive damages, which are otherwise permitted under California's
19  usury laws.  (Pl.'s Opp'n 2.)  California courts have repeatedly refused to enforce contractual
20  limitations on statutorily imposed remedies such as punitive damages as unconscionable based
21  primarily on the rationale that the remedies are important to the effectuation of that statute's
22  policy. *Armendariz*, 24 Cal. 4th at 103 (holding arbitration agreement's limitation on punitive
23  damages unconscionable) (citing cases); *see also Graham Oil Co. v. ARCO Products Co.*, 43 F.3d
24  1244, 1248 (9th Cir. 1994).
25         Defendants argue that this rule should not apply here, where punitive damages are not
26  available under the claims brought by Plaintiffs.  (Def.'s Reply 8-9.)  Defendants state that
27  damages are not available under Plaintiff's Unfair Competition Law claim, Cal. Bus. & Prof.
28  Code § 17200, nor are they available for purported usury violations because such violations are not

derived from a common law right, and thus any punitive damages are cumulative and not available under *Turnbull &Turnbull v. ARA Transp., Inc.*, 219 Cal. App. 3d 811, 826 (1990) (stating that plaintiffs cannot recover punitive and statutory damages where the statute's damages provisions are already punitive in nature). Thus, in *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 712 (2011), the court found an arbitration provision's limitation on punitive damages was not unconscionable where the plaintiff had failed to assert a claim for which punitive damages were recoverable. The Court must determine if Plaintiffs have similarly failed to do so here.

Under California's interest rate law, a person or business who paid greater than the allowed interest rate can recover treble the amount of money so paid from the person or company who received such interest illegally. Cal. Uncodified Initiative Measures and Statutes 1919-1. Applying the rule articulated in *Turnbull*, to which Defendants cite, it is clear that Plaintiffs cannot recover treble damages *in addition to* punitive damages. However, the arbitration provision does not exclude the award of statutory treble damages. It reads: "The arbitrator at such arbitration shall not be entitled to award punitive damages to any party." (Compl. Ex. 1 at 8.) Based on this language, the Court finds the arbitration provision's restriction of punitive damages does not unfairly limit Plaintiffs' ability to vindicate its statutory rights against Defendants. The arbitration provision says nothing about limiting compensatory treble damages. Applying the reasoning set forth in *Chin*, *supra*, where the provision does not actually limit the relief available based on the statutory rights asserted, it is not substantively unconscionable.

*(iii) "Loser Pays" Provision*

Plaintiffs further assert the cost-shifting provision of the arbitration clause is unconscionable because it imposes the costs and fees of arbitration on the losing party. (Pl.'s Opp'n 2.) Indeed, in *Porkorny v. Quixtar, Inc.*, 610 F.3d 987, 1004 (9th Cir. 2010), a similar "loser pays" arbitration term was found substantively unconscionable because it put the plaintiffs in arbitration "at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court." Defendants essentially concede that this term is substantively unconscionable, although they do argue that there is no evidence that the cost of litigating a class

action in district court "will not grossly exceed the few thousand dollars apiece they might be responsible for should they lose before an arbitrator in North Carolina." (Def.'s Reply 9.) In the alternative, Defendants argue that the lack of procedural unconscionability renders the term enforceable, or that California's rule against cost-shifting should be preempted by the FAA under *Concepcion*, or, finally, that the term should be severed if found ultimately applicable and unconscionable. (Def.'s Reply 7-10.)

Parties to a contract "may challenge a pre-dispute arbitration clause as unconscionable if the fees required to initiate the process are unaffordable." *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1570 (2009). In determining whether the arbitration cost is unconscionably high, the Court is required to consider Plaintiffs' ability to pay the arbitration costs at the time the agreement was entered into. *Id.* at 1583. In *Monex Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1145 (C.D. Cal. 2009), the court examined the parties' competing fee estimates and found that neither one rendered the arbitration provision unconscionable where the plaintiff had significant positive net worth when he entered the agreement. Notably, in *Monex*, the arbitration provision at issue did not shift all of the costs of arbitration to one party. Here, the fee-shifting provision creates more cost to one party, but it is mutual, applying equally to both parties, and is not necessarily one-sided or unfair where, as here, the Court found minimal evidence of procedural unconscionability. Even accepting Plaintiffs' estimate of a $7,044 cost for a three-day arbitration in North Carolina, Plaintiffs have failed to demonstrate that such cost is unreasonable or that the fee-shifting provision is unenforceable.

*(iv) Unilateral Right to Exercise Self-Help and Lack of Mutuality*

Lastly, Plaintiffs argue that the arbitration clause is unconscionable because it permits BFS to exercise self-help remedies, including foreclosure of Plaintiffs' property, outside of arbitration. (Pl.'s Opp'n 2.) This non-mutual reservation of rights reads as follows:

> Nothing in this arbitration provision shall be deemed to . . . (iii) limit the right of the Purchaser hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver. The Purchaser may exercise such self help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document.

> Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning to resort to such remedies.

(Compl. Ex. 1 at 8.)  Again, Defendants concede that similar non-mutual terms reserving extra-arbital remedies for one party have been found unconscionable by California courts, but argue that the lack of procedural unconscionability here distinguishes those cases.  (Def.'s Reply 9.)  The Court agrees.

"Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability."  *Nagrampa*, 469 F.3d at 1286 (citing *Armendariz*, 24 Cal. 4th at 119).  All of the cases cited by Plaintiff emphasize that the "weaker party" is restricted in favor of the "stronger party" due to the underlying oppressive circumstances surrounding the contract at issue.  *See, e.g.*, *Sanchez v. Valencia Holding Co., LLC*, 2011 Cal. App. LEXIS 1467 at *50 (Cal. App. Nov. 23, 2011) (finding that by exempting repossession–to which only the car dealer would resort–from arbitration, while subjecting a request for injunctive relief–the buyer's comparable remedy–to arbitration, the provision created an unduly oppressive distinction in remedies, forcing the weaker party to arbitrate claims but exempting claims most likely to be filed by the stronger party) (citing cases).

Here, the lack of mutuality, although certainly one-sided and perhaps unfair, is not unconscionable.  In *Chin*, 194 Cal. App. 4th at 712, the court found that an arbitration clause's injunctive remedy exception was not unconscionable although it only benefitted one party under other provisions in the contract.  "The injunctive remedy exception allows 'a party' to go to court for 'injunctive or other provisional relief.'  It does not provide 'a choice of forums [solely] for the claims of the stronger party.'"  *Id.* (quoting *Armendariz*, 24 Cal. 4th at 119).  Although the terms at issue here are admittedly more one-sided than those in *Chin*, providing several remedies such as foreclosure and preliminary injunctions only to Defendants, the Court finds lack of mutuality mitigated by the weak showing of procedural unconscionability.  The crucial oppressive element is lacking.

*(v) Conclusion*

As discussed above, the Court finds Plaintiffs have failed to meet their burden to establish that the arbitration agreement should not be enforced. Thus, the Court need not directly address whether any of California's relevant unconscionability doctrines are preempted by the FAA under the Supreme Court's reasoning in *Concepcion*. Here, the arbitration agreement was not "forced upon the Plaintiffs leaving them with no meaningful choice." *Kilgore*, 2012 WL 718344 at *14. Especially given the liberal federal policy favoring arbitration agreements and the fundamental principle that arbitration is a matter of contract, as articulated by the FAA, the Court must not relieve Plaintiffs of their contractual obligation to arbitrate in this case, where it cannot find the agreement was unconscionable. Accordingly, Defendants' motion to compel arbitration is **GRANTED**.

**3. Stay of the Proceeding**

Pursuant to 9 U.S.C. § 3, the Court may order a stay "pending compliance with a contractual arbitration clause." *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978). The FAA provides,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Given the strong federal policy favoring arbitration, the Court **STAYS** this proceeding pending completion of the arbitration.

## CONCLUSION

For the reasons stated above, the Court finds that the arbitration provision is not unconscionable under California law and that Defendants may enforce the arbitration agreement. Therefore, the Court **GRANTS** Defendants' motion to compel arbitration. The parties **SHALL SUBMIT** their dispute to arbitration. Defendants **SHALL FILE** a notice of said completion with the Court within thirty (30) days of the completion of arbitration. The Court **STAYS** this action

//

pending the outcome of the arbitration.  Accordingly, Plaintiffs' motion for corrective action (ECF No. 23) is **DENIED** without prejudice pursuant to this stay in the proceedings.

     **IT IS SO ORDERED.**

DATED: March 19, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge